# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| GEORGIA TECH RESEARCH CORPORATION,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>MURATA ELECTRONICS NORTH AMERICA, INC., and<br><br>MURATA MANUFACTURING CO., LTD.,<br><br>　　　　　　　Defendants. | Civil Action No. 1:24-cv-05268-JPB |

## GEORGIA TECH RESEARCH CORPORATION'S RESPONSE
## IN OPPOSITION TO MOTION TO STAY [DOC. 14]

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION AND FACTUAL BACKGROUND ................................1

II.   ARGUMENT.........................................................................................6

  A. Legal standard for assessing whether to stay a case........................................7

  B. To avoid unduly prejudicing GTRC, this case should proceed without further delay. ....................................................................................................9

    1.   GTRC will be unduly prejudiced by a stay in this case. ...........................9

    2.   Any simplification is speculative at this time. ......................................12

    3.   The stage of this case does not justify a stay...........................................14

III.  CONCLUSION...........................................................................................15

## I.    INTRODUCTION AND FACTUAL BACKGROUND

This motion to stay is the latest in a series of stall tactics by Defendants Murata Electronics North America, Inc. and Murata Manufacturing Co., Ltd. (collectively "Murata" or "Defendants") to stop this case from progressing. The Court should reject this latest attempt by Murata to further delay the case. While Murata frames their motion to stay as being filed without delay and at "the earliest stage possible," that is only because their actions have made it so. And if the Court grants the motion, the case will be delayed longer than Murata asserts.

In August 2024, Plaintiff Georgia Tech Research Corporation ("GTRC") wrote Murata notifying it of the infringement alleged in the Complaint—in fact, attaching a proposed Complaint and claim chart—to prompt settlement discussions between the parties. Exhibit 1 (Aug. 22, 2024, Letter to Murata). GTRC indicated it was prepared to file the Complaint but invited Murata to discuss a potential resolution without litigation. Murata responded to GTRC (through counsel) in August and requested additional time to investigate the allegations. Then Murata requested the parties enter an NDA before exchanging information and requested additional time to respond. GTRC obliged but stated that it required some sort of good faith offer to resolve the dispute by November 8.

On that date, instead of an offer to resolve the dispute, Murata's counsel asserted a purported defense to the claim and stated it should be able to provide a

settlement offer if GTRC could "help us get 'over this hurdle'" of the alleged defense. Four days later, on November 12, two things happened. First, GTRC responded to Murata's letter to explain that the purported "hurdle" was based on both faulty factual assumptions and an incorrect view of the law and to request a good faith offer to resolve the dispute by the end of the week, November 15. The other action—which was only revealed later—was that Murata's CEO signed a power of attorney to the attorneys at Hayes & Boone, Murata's lead counsel here, "to prosecute and to transact all business before the [USPTO] in connection with the above-identified petition for *Inter Partes* Review" ("IPR"), challenging the patent GTRC was claiming Murata infringed. See Exhibit 2 (Power of Attorney dated Nov. 12, 2024). Thus, at the same time Murata was professing its interest in settlement to GTRC—if GTRC would just give Murata more time—Murata was already secretly working on its IPR petitions.

Then on November 15, rather than providing any good faith offer or any financial information as requested, Murata responded to GTRC with more purported defenses and excuses. So nearly three months after GTRC contacted Murata to broach a negotiated resolution, and having gotten nowhere, GTRC filed this action on November 17, 2024. [Doc. 1].

The next delay from Murata related to service of the complaint. Both during and after filing the action, GTRC asked Murata's legal counsel who had been

speaking on their behalf if Murata would waive service of the complaint. Murata's counsel ignored those requests at first. Then, around December 10, Murata's current litigation counsel at the Haynes and Boone firm, Mr. Lao, contacted GTRC saying he had been retained by *only* the U.S. entity, Murata Electronics North America, Inc. ("MENA"), and requested an extension of time to answer. But Mr. Lao stated he had *not yet* been retained by the Murata Manufacturing Co., Ltd. ("MMC"), the Japanese entity, as of then (December 12), even though MMC had *already* granted power of attorney to attorneys at the same firm the month before.[1]

Eventually, after multiple follow-ups, Mr. Lao informed GTRC on January 7, 2025, that he was finally "litigation counsel for MMC" and offered to accept a waiver of service for MMC as of that date *if* GTRC would agree to synchronize the Defendants' answer deadlines, which would have been April 7 (under Fed. R. Civ. P. 4(d)(3)). The parties eventually agreed that both Murata entities would respond to the complaint by March 31 [Doc. 10] (subsequently extended to April 2 [Doc.

---

[1] Additionally, Mr. Lao and others at Haynes and Boone have represented Murata in *every patent litigation* filed in the district courts against Murata since 2018. *Modulus Systems LLC v. Murata Electronics North America, Inc.*, No. 2:23-cv-00220-JRG (E.D. Tex. filed May 18, 2023), ECF 12 (Answer for MENA signed by Mr. Lao); *MIMO Research, LLC v. Murata Electronics North America, Inc. and Murata Manufacturing Co., Ltd.*, No. 5:22-cv-00073, (E.D. Tex. filed June 15, 2022), ECF 14 (notice of appearance by Mr. Lao for both entities); *Inergetic AB v. Murata Electronics North America, Inc.*, 3:18-cv-01686-N (N.D. Tex. filed June 27, 2018), ECF 12 (Answer signed by Haynes and Boone).

12]). About a month later, on February 10, MMC filed the IPR Petitions at the USPTO.

Then, Murata responded to the complaint on April 2 by filing a motion to dismiss [Doc. 13], rather than answering. As shown in GTRC's concurrently filed opposition [Doc. 20], that motion is meritless. Nevertheless, under this Court's rules, Murata's action prevents discovery from opening and this case from moving forward "until Murata answers the complaint, which will not occur unless and until the Court denies Murata's motion to dismiss." [Doc. 19 at 2].

Murata omits most of this chronology from its Motion to Stay. In Murata's telling, its "diligence indicates that it is not attempting to create a tactical advantage." But the real story is one of delay and subterfuge: Murata dragged its feet during the supposed "negotiations," thus delaying GTRC's filing of the complaint while Murata was preparing its IPR petitions; delayed agreeing to waive service even though there was never any doubt Haynes and Boone would be engaged to represent MMC (in fact, had *already* been engaged as to the IPRs); and then, rather than answering the complaint that Murata had received over *seven months* earlier, Murata filed a meritless motion to dismiss to prevent any discovery from going forward while filing the present Motion to Stay pending the IPRs.

In addition, Murata misstates when the Patent Trial and Appeal Board ("PTAB") would be expected to act on its petitions. In requesting the pre-

institution stay, Murata argued the institution decision was expected "less than five months from [April 2]—no later than August 10, 2025. Mot. to Stay at 3. Murata's August 10 date was apparently based on the date Murata *filed* the petitions.

But a patent owner's preliminary response to the petition isn't due three months "[a]fter the petition is filed"; it is due "three months *after the date of a notice [from the PTAB] indicating*" that the petition "has been granted a filing date." 37 C.F.F. § 42.107(a). When Murata filed the Motion to Stay on April 2, the PTAB had not yet issued the notice of granting the filing dates. Thus, the time for GTRC to respond to the petition had not even started to run. So, Murata's "no later than August 10" statement was incorrect.

Subsequently, on April 15, 2025, the PTAB issued its Notice of Filing Date Accorded in both IPRs. Exhibit 3 ("Patent Owner may file a preliminary response to the petition no later than three months from the date of this notice."). Thus, in accordance with 37 C.F.R. § 107(b) and 35 U.S.C. § 314(b), the PTAB's decision on whether to institute trial might not come until October 15.[2] And the PTAB's statutory deadline to issue a final decision on patentability is ordinarily one year after the institution decision comes, *e.g.*, by October 15, *2026*, unless the Direct finds "good cause" to extend that period by up to six more months, 35 U.S.C.

---

[2] Further, because the time to file the preliminary response is set by rule rather than statute, 35 U.S.C. § 313, that time *can* be extended if there were good cause to do so. 37 C.F.R. § 42.5(b)–(c).

§ 316(a)(11).[3] Murata's Motion to Stay underscores the tactical nature of Defendants' actions, as a stay would only serve to further delay the case and unduly prejudice GTRC.

## II.   ARGUMENT

GTRC has an interest in the timely enforcement of its patent rights, and it is entirely speculative whether the IPRs will even be instituted, let alone resolved in Defendants' favor. Courts in the Eleventh Circuit have denied stays where the PTAB has not yet instituted the petition.

Defendants have failed to meet their burden of demonstrating the need for a stay. *MiMedx Grp., Inc. v. Liventa Bioscience, Inc.*, No. 1:14-cv-1178-MHC, 2015 WL 13907479, at *2 (N.D. Ga. Apr. 6, 2015). Granting a stay at this stage just delays resolution of this case and prejudices GTRC, as the stay is based on the speculative possibility that the IPR petitions will be instituted. Defendants' motion should be denied.

---

[3] In the decade-plus since Congress created IPR proceedings, the Director has only extended the deadline a handful of times. However, given the current concerns about workload and efficiency at the PTAB, it is uncertain whether the Office may use this "good cause" extension more often in the coming months. *See* Exhibit 4, Acting Director Stewart, Memorandum on "Interim Processes for PTAB Workload Management (Mar. 26, 2025)), *available at* https://www.uspto.gov/sites/default/files/documents/InterimProcesses-PTABWorkloadMgmt-20250326.pdf (last accessed April 29, 2025).

**A. Legal standard for assessing whether to stay a case.**

District courts have the inherent power to manage their dockets but are not required to delay their own proceedings. *See MiMedx Grp.*, 2015 WL 13907479, at *2, 6 (denying motion to stay the litigation pending the pre-institution IPRs). Though a stay pending an IPR may offer some benefits, the Court must also consider the "potential difficulties," as the IPR process only addresses "the validity of the patent with regard to prior art" and can take a significant amount of time. *See id.* at *2 (citing *Tomco Equip. Co. v. Se. Agri-Sys., Inc.*, 542 F. Supp. 2d 1303, 1307 (N.D. Ga. 2008)). In addition to the potential duration of the review, a further concern arises where, as here, the USPTO has not yet decided whether to institute. *MiMedx Grp.*, 2015 WL 13907479, at *5 (denying a motion to stay where the "PTO has not decided whether to grant [the] IPR," and noting that even if the PTO institutes review, it would take another full year to issue a decision, with the possibility of an additional six-month delay).

Courts in this district typically evaluate three factors in determining whether to grant a stay pending completion of an IPR or reexamination proceeding: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *ThermoLife Int'l, LLC v. Hi-Tech Pharms., Inc.*, No. 1:15-cv-00892-

7

ELR, 2019 WL 5597311, at *2 (N.D. Ga. Sept. 9, 2019), *report and recommendation adopted*, No. 1:15-cv-00892-ELR, 2019 WL 5550001 (N.D. Ga. Oct. 3, 2019).

Additionally, courts may consider the "burden of litigation" factor. *Emerson Elec. Co. v. SIPCO LLC*, No. 1:15-cv-0319-AT, 2017 WL 5665563, at *15 (N.D. Ga. Jan. 20, 2017) (citing *Murata Machinery USA v. Daifuku Co., Ltd.*, 830 F.3d 1357, 1362 (Fed. Cir. 2016), *report and recommendation adopted*, No. 1:15-cv-319-AT, 2017 WL 5665562 (N.D. Ga. Mar. 6, 2017). However, when balancing the parties' competing interests, the Court is not limited to these factors— "the totality of the circumstances governs." *Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.*, No. 6:12-cv-17277-RBD-DAB, 2013 WL 1969247, at *1 (M.D. Fla. May 13, 2013) (citing *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1035 (C.D. Cal. 2013)).

Ultimately, the Court's decision is discretionary. *MiMedx Grp.*, 2015 WL 13907479, at *2 (N.D. Ga. Apr. 6, 2015). And the party seeking a stay bears the burden of showing that a stay is appropriate. *Id.* Here, after balancing the relevant factors, Defendants have failed to establish that a stay is warranted.

**B. To avoid unduly prejudicing GTRC, this case should proceed without further delay.**

    1. *GTRC will be unduly prejudiced by a stay in this case.*

Granting a stay risks delaying the final resolution of the case and may result in a significant degree (certainly "some degree") of prejudice to GTRC. *MiMedx Grp.*, 2015 WL 13907479, at *4 (noting that this inherent risk of delay is not dispositive). To evaluate whether a stay would unduly prejudice the non-moving party, this district considers four sub-factors: "(1) the timing of the review request; (2) the timing of the request for stay; (3) the status of the review proceedings; and (4) the relationship of the parties." *Id.* at *4–5; *see also* Mot. to Stay at 10 (citing same sub-factors).

Contrary to Murata's assertion that it was "diligent, not dilatory," the sequence of events explained above shows otherwise. Murata was first informed about the infringement allegations in August 2024. MMC indisputably was already working on IPR petitions by the time it granted power of attorney to Haynes and Boone in November 2024, but it did not file the petitions until February 2025. Meanwhile, MMC delayed appointing its long-standing litigation counsel at Haynes and Boone to represent it, even though the U.S. entity had already done so, no doubt to delay accepting a good faith attempt by GTRC to avoid unnecessary expenses related to service on the Japanese entity and further delay the beginning of these proceedings. These actions smack of the very "attempt[] to create a

tactical advantage" that Murata professes it lacks. See Mot. to Stay at 10. Thus, the first two sub-factors weigh against a stay.

Further, the third sub-factor, the status of the IPR proceedings, weighs strongly against a stay where, as here, the PTO has not yet decided whether to institute review. *MiMedx Grp.*, 2015 WL 13907479, at *5 (denying a stay where institution decision was still pending). With the PTAB's institution decision at least four months away, this case would be left in "limbo." *See Automatic Mfg. Sys.*, 2013 WL 1969247, at *3 ("If [the PTAB] chooses not to proceed, then this action will have been left languishing on the [c]ourt's docket with no discovery, no positioning of the parties on claim construction, and no dispositive motions."). Granting a stay under these circumstances would improperly reward the Defendants' delay tactics.

Contrary to the Defendants' assertion that courts in this district "regularly grant stays prior to institution decisions" (Mot. to Stay at 11), numerous courts within and beyond this Circuit deny or postpone motions to stay that are filed before a PTAB institution decision. *3Shape A/S v. Carestream Dental, LLC*, No. 1:22-cv-01829-WMR, 2023 WL 2068050, at *1 (N.D. Ga. Jan. 5, 2023) (concluding that "any potential issue simplification is a matter of conjecture" pre-institution); *Wherevertv, Inc. v. Comcast Cable Commc'ns, LLC*, No. 2:18-cv-00529, 2019 WL 5061260, at *3 (M.D. Fla. Oct. 9, 2019) (finding a stay would

unduly prejudice the plaintiff who "should be able to litigate its case until the USPTO decides whether to institute"); *MiMedx Grp.*, 2015 WL 13907479, at \*5–6 (collecting cases and denying a stay where the IPR petition had not yet been granted); *Trover Grp., Inc. v. Dedicated Micros USA*, No. 2:13-cv-1047-WCB, 2015 WL 1069179, at \*5, 7 (E.D. Tex. Mar. 11, 2015) (collecting cases and noting that "the majority of courts … have postponed ruling on stay requests or have denied stay requests when the PTAB has not yet acted on the petition for review"); *Automatic Mfg. Sys.*, 2013 WL 1969247, at \*3 (finding the stay would "unduly prejudice or present a clear tactical disadvantage" to the plaintiff). This sub-factor weighs against a stay.

Finally, the Court must consider the relationship between the parties. While injunctive relief may not be available, GTRC retains a strong "interest in the timely enforcement of its patent rights." *Kirsch Rsch. & Dev., LLC v. Intertape Polymer Corp.*, No. 8:20-cv-1982-VMC-JSS, 2021 WL 2905436, at \*3 (M.D. Fla. Apr. 7, 2021) (noting the asserted patent had expired almost a year before). At any rate, the absence of a motion for preliminary injunction does not weigh strongly against a finding of undue prejudice, as courts have recognized that a party may decline to pursue such relief for reasons "unrelated to whether the parties are competitors." *MiMedx Grp.*, 2015 WL 13907479, at \*5 (noting the fact that the plaintiff failed to move for a preliminary injunction, even if relevant, was not dispositive); *Verinata*

*Health, Inc. v. Ariosa Diagnostics, Inc.*, No. 3:12-cv-05501-SI, 2014 WL 121640, at *3 (N.D. Cal. Jan. 13, 2014) (rejecting the defendant's argument that a finding of undue prejudice is undercut by the plaintiff's failure to seek injunctive relief, even where the plaintiff did not practice the asserted patents). A stay here would unduly prejudice GTRC by delaying a trial on the merits. The fact that GTRC is not a market competitor of Murata does not eliminate the prejudice caused by a "substantial delay of an imminent trial date." *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, No. 2:13-cv-00213-JRG-RSP, 2015 WL 627887, at *2 (E.D. Tex. Jan. 29, 2015) (finding the prejudice factor weighed against a stay although the plaintiff did not practice the patents). Accordingly, this sub-factor also weighs, at least slightly, against granting a stay.

A stay would only serve to increase GTRC's litigation burden by delaying its trial on the merits. On balance, the Defendants' tactical delay and the resulting prejudice to GTRC tilt the first factor against a stay.

### 2.  *Any simplification is speculative at this time.*

Given that the PTAB has not yet ruled on whether to institute review, "any argument about whether the IPR process will simplify issues in this litigation is highly speculative." *DiCon Fiberoptics, Inc. v. Preciseley Microtechnology Corp.*, No. 15-cv-01362-BLF, 2015 WL 12859346, at *2 (N.D. Cal. Oct. 13, 2015). Courts in this district have held that such a speculative benefit is insufficient to

warrant a stay. *See MiMedx Grp.*, 2015 WL 13907479, at *4 (noting the PTO may decline to institute review, and finding the simplification factor weighed against a stay).

Moreover, relying on the PTAB's past performance "does not give the [c]ourt any concrete information about how the PTAB will analyze the asserted patent in this case." *DiCon Fiberoptics*, 2015 WL 12859346, at *2 (finding that, absent unusual circumstances, the filing of an IPR "does not by itself simplify the issues in a case"); *see also Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, No. 1:12-cv-00773, 2013 WL 6097571, at *2 (W.D. Tex. June 10, 2013) ("[T]here is a real risk at this point the PTAB will decline to grant *inter partes* review, which would make a stay at this point a complete waste of time."). That is even more the case today, as the PTAB's recent "Workload Management" memorandum and current and future "staff reductions" that have been announced have led many PTAB practitioners to predict a *decrease* in the number of PTAB trials to be instituted. *See* Exhibit 4; Exhibit 5 (Mar. 27, 205 Law360 article, "New Procedures Expected to Result in More PTAB Denials").

Accordingly, any potential simplification is "a matter of conjecture at this stage." *3Shape A/S*, 2023 WL 2068050, at *1–2 (denying the motion to stay pre-institution); *Kirsch Rsch. & Dev.*, 2021 WL 2905436, at *3 ("Without more, the mere possibility that this case could be simplified does not outweigh the prejudice

13

that [the plaintiff] would suffer from a lengthy delay."); *see also Capella Photonics, Inc. v. Cisco Sys., Inc.*, No. 3:14-cv-03348-EMC, 2014 WL 12957991, at *2 (N.D. Cal. Oct. 14, 2014) (finding the second factor neutral, as it was speculative whether the petition would be instituted at all). Thus, because it is speculative whether the PTAB will institute either petition, this factor weighs against granting a stay, or at the very least, does not cut in favor of a stay.

      3.  *The stage of this case does not justify a stay.*

      Although this case is in the early stages, the overall weight of the factors is against granting a stay. *See DiCon Fiberoptics*, 2015 WL 12859346, at *3 (finding that an early stage of litigation, balanced against the speculative nature of the simplification factor and a neutral prejudice factor, did not warrant granting a stay). As the other two factors weigh against a stay, the considerations of no discovery and no trial date lend little support to Defendants' request. That is particularly true here where Murata's unilateral actions, discussed above, have prevented this case from advancing beyond the preliminary stages. Murata even invokes the concurrently filed Motion to Dismiss to suggest the Court could simply *avoid* addressing that issue by staying the litigation. Mot. to Stay at 1, 6. In fact, Defendants' Motion to Dismiss *supports* denying the stay. Otherwise, if the case is stayed and then trial is not instituted (or instituted and the patent claims are found

to be patentable), then the case will suffer even further delay upon return to this Court until the Motion to Dismiss is decided.

## III.    CONCLUSION

After careful balancing of the above factors, it is not appropriate to stay the present case, and certainly not before the PTAB has issued its institution decision. Defendants have failed to show a stay of the case is warranted, so GTRC respectfully requests that the Court deny Defendants' Motion in its entirety.

*/s/ Warren J. Thomas*

John W. Harbin (Ga. Bar No. 324130)
Gregory J. Carlin (Ga. Bar No. 455865)
Warren J. Thomas (Ga. Bar No. 164714)
**Meunier Carlin & Curfman LLC**
999 Peachtree Street NE
Suite 1300
Atlanta, GA 30309
Tel: 404-645-7700
jharbin@mcciplaw.com
gcarlin@mcciplaw.com
wthomas@mcciplaw.com

*Attorneys for Plaintiff Georgia Tech Research Corporation*

## <u>LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE</u>

Pursuant to LR 7.1(D), I certify that this brief has been prepared with one of the font and point selections approved by the Court in LR 5.1.

*/s/ Warren J. Thomas*
Warren J. Thomas