# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

GEORGIA TECH RESEARCH
CORPORATION,

     *Plaintiff,*

     v.

MURATA ELECTRONICS NORTH
AMERICA, INC. and MURATA
MANUFACTURING CO., LTD.,

     *Defendants.*

Civil Action No. 1:24-cv-05268-JPB

## MEMORANDUM IN SUPPORT OF RENEWED MOTION TO STAY BY DEFENDANT MURATA ELECTRONICS NORTH AMERICA, INC., AND DEFENDANT MURATA MANUFACTURING CO., LTD.

## <u>TABLE OF CONTENTS</u>

I.   BACKGROUND ....................................................................................3

   A.   The filing of this litigation and the original IPR petitions. ............................3

   B.   The PTAB's brand new "discretionary denial" procedure............................4

   C.   Murata files an EPR request ...........................................................5

II.  LEGAL STANDARD..............................................................................8

III. ARGUMENT ......................................................................................9

   A.   The case is in its early stages........................................................10

   B.   There is a high likelihood that a stay will completely resolve or at least drastically simplify all issues in this case.....................................................10

   C.   A stay will not unduly prejudice GTRC................................................13

   D.   A stay would limit the burden of litigation on the Court and the parties.......17

IV.  CONCLUSION ...................................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adair v. Boat Dock Innovations, LLC, et. al.*,
    No. 1:12-cv-01930-SCJ, Dkt. 43 (N.D. Ga. February 27, 2013) ......................12

*Doubleday Acquisitions LLC v. Envirotainer AB*,
    No. 1:21-CV-03749-SCJ, 2022 WL 18778991 (N.D. Ga. June 3,
    2022)
    ...................................................................................... 8, 9, 10, 12, 13, 14, 15, 16

*Epic Tech, LLC v. Pen-Tech Assocs., Inc*.,
    No. 1:20-CV-2428-MHC, 2020 WL 8258736 (N.D. Ga. Sept. 28,
    2020) .................................................................................................12, 15, 16

*Gould v. Control Laser Corp*.,
    705 F.2d 1340 (Fed. Cir. 1983) ...........................................................................8

*Interface, Inc. v. Tandus Flooring, Inc*.,
    No. 4:13-CV-46-WSD, 2013 WL 5945177 (N.D. Ga. Nov. 5,
    2013) ...............................................................................................................9, 10

*IP Co., LLC v. Tropos Networks, Inc.*,
    No. 1:06-cv-00585, Dkt. 72 (N.D. Ga. August 16, 2007) ...................................9

*IP Co., LLC v. Tropos Networks, Inc.*,
    No. 1:06-CV-0585-CC, 2014 WL 12622444 (N.D. Ga. Mar. 5,
    2014) ...............................................................................................................11, 12

*iRhythm Technologies, Inc. v. Welch Allyn, Inc*.,
    IPR2025-00363, Paper 10 (PTAB June 6, 2025) ................................................4

*In re Motorola*,
    Appeal No. 25-134....................................................................................................5

*Mueller Water Products, Inc. et al v. Victaulic Company*,
    1:12-cv-03446-JEC, Dkt. 27.................................................................................11

*In re SAP Am., Inc*.,
    25-00132 ..................................................................................................................5

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
   759 F.3d 1307 (Fed. Cir. 2014) ............................................................................16

**Statutes**

35 U.S.C. § 303 ..................................................................................................................2

35 U.S.C. § 304 ..................................................................................................................6

35 U.S.C. § 314(a) ............................................................................................................1

Defendants Murata Electronics North America, Inc. and Murata Manufacturing Co., Ltd. (collectively, "Murata") renew their motion for a stay pending resolution of a newly-filed ex parte reexamination ("EPR") of the '914 Patent.  Ex. A (Request for Ex Parte Reexamination of '914 Patent).

Why the filing of a new EPR and why the need for a renewed motion to stay? As the Court is aware, Murata previously filed two *inter partes* review ("IPR") petitions and moved to stay this case for their duration. (Dkt. 14.)  It did so under the assumption that the PTAB would ***at the very least*** consider the likelihood of success on the merits of Murata's prior art challenges.  *See* 35 U.S.C. § 314(a).  That turned out not to be the case.  As indicated in the parties' joint notice to the Court filed yesterday on August 7, 2025, Murata's original motion to stay is now moot given that the Acting Director for the United States Patent and Trademark Office (the "PTO") exercised a brand new discretionary denial procedure—***announced over one month after Murata filed its IPR petitions***—allowing the Acting Director to issue a "discretionary denial" of an IPR petition without ever considering the merits or their likelihood of success. (Dkt. 25.) As recently as June 2025, the Acting Director has denied IPR petitions based solely on the age of the challenged patents, with no regard to the strength of the prior art in any way.

No one at the PTO reviewed Murata's prior art challenges.  Accordingly, Murata expeditiously pivoted its prior art challenges to an ex parte reexamination

(the "EPR").  Indeed, Murata filed its EPR petition today, August 8, 2025, less than two weeks after the Acting Director's discretionary denial.

Murata is moving for the Court to stay this case on the same grounds as it previously moved in its original motion, only now as applied to the duration of the EPR rather than the IPRs.  No facts have changed in this stay analysis versus the previous motion to stay, and the grounds and reasoning for this renewed motion to stay are virtually identical to Murata's prior motion to stay.  (Dkt. 14.)  Indeed, any difference between the current and previous motion to stay actually makes the analysis weigh more in favor of granting the stay.  For example, the chances of an EPR request being granted are higher than the chances of an IPR being instituted. Reexamination is granted 92.6% of the time.  Moreover, where the patent is expired—as is the case here—there is no chance for amendment during the reexamination.  Thus, any dispositive decision as to patentability in the reexamination will simultaneously dispose of this case in its entirety.  Further, the time to a decision on whether to grant the request is only three months, as opposed to six-months for an institution decision in an IPR.[1]  35 U.S.C. § 303.

As Murata previously highlighted in its initial motion to stay, all three of the traditional stay factors weigh in favor of granting a stay.  The procedural shift from

---

[1] In fact, the deadline for a decision to grant the EPR is November 10, 2025—less than a month from the originally expected institution decision from the PTAB.

an IPR to an EPR as the vehicle for review at the patent office does not change the analysis. If anything, the analysis now weighs more in favor of a stay, as EPR's are more frequently granted. The Court should stay the case because the case is in its early stages, a stay is highly likely to completely resolve—or at least drastically simplify—all issues in this trial, GTRC will not be unduly prejudiced by a delay in enforcement of an expired patent, and the stay will reduce the burden of litigation on the parties and the Court.

## I.    BACKGROUND

### A.    The filing of this litigation and the original IPR petitions.

Georgia Tech Research Corporation ("GTRC") has accused Murata of infringing claims 1, 2, 11, 12, 13, 14, 15, and 16 of the '914 Patent (the "Asserted Claims"). Dkt. 1. GTRC filed the present action on November 17, 2024, nearly four months after the '914 Patent expired.[2] On February 10, 2025—three months after the action was filed—Murata filed two separate IPR petitions at the PTAB, each asserting multiple grounds for the invalidity of all Asserted Claims. *See* Dkt. 14-1 (Petition for *inter partes* review, IPR2025-00383); Dkt. 14-2 (Petition for *inter partes* review, IPR2025-00384).

---

[2] The '914 Patent's adjusted expiration date was July 27, 2024.

### B.    The PTAB's brand new "discretionary denial" procedure

In the months following Murata's IPR petitions and its motion to stay, the procedures at the PTAB concerning IPRs saw unprecedented upheaval.  Due to staff reductions at the PTAB, on March 26, 2025—merely 7 days prior to Murata's original motion to stay—the PTAB announced a new discretionary denial procedure that would allow the Acting Director to deny IPR petitions ***without ever considering the merits or the likelihood of a petition's success***.  Since Murata's motion to stay was filed, this new procedure has been used to deny petitions solely in the interest of conservation of the PTAB's resources with no regard to their merits, effectively undermining the purpose for which the PTAB was created—a reliable alternative for trying issues of validity parallel to litigation.  *See* Ex. B ("New PTAB Denial Processes Grow More and More Confusing," https://www.law360.com/ip/articles/2365841).

The upheaval of the PTAB's procedures only worsened in the months following the announcement of the new procedure.  As recent as June 6, 2025, the Acting Director of the PTAB denied petitions on the grounds that a Patent's age alone can create a "settled expectation" of validity—that is, the Acting Director has relied on the age of the patent alone to deny potentially meritorious IPR petitions. *iRhythm Technologies, Inc. v. Welch Allyn, Inc*., IPR2025-00363, Paper 10 (PTAB June 6, 2025).

4

And Murata's two IPR petitions (IPR2025-00383 and IPR2025-00384) were the most recent victims of this unprecedented "settled expectations" reasoning.[3] *See* (Dkt. 25-1) (IPR2025-00383, Paper 14 (PTAB July 29, 2025)).  GTRC never filed a response refuting the merits of the petitions. Instead, it petitioned for discretionary denial and argued that the Patent Office should "exercis[e] discretion to better allocate [its] resources elsewhere." Ex. C (IPR2025-00383, Paper 9 (PTAB June 16, 2025). Thanks to its new procedure, the PTAB never considered the merits of Murata's IPR petitions.  Rather, the Acting Director's discretionary denial was based purely on procedural grounds.  (Dkt. 25-1.)

Since the merits of Murata's prior art challenges were never considered by anyone at the PTO, Murata expeditiously pivoted its IPR challenges to an EPR request.

### C.    Murata files an EPR request

An EPR—like an IPR—is a mechanism for asserting invalidity grounds to the PTO as an alternative to litigating them in Court. In contrast to an IPR, an EPR request is sent to the Central Reexamination Unit of the PTO—not the PTAB—to

---

[3] Murata is not the only offended party.  Mandamus petitions have been filed in at least two other cases asserting that the new discretionary denial procedure and "settled expectations" reasoning are unconstitutional.  *See, e.g., In re Motorola*, Appeal No. 25-134, filed in the United States Court of Appeals for the Federal Circuit on June 23, 2025; *In re SAP Am., Inc.*, 25-00132, filed in the United States Court of Appeals for the Federal Circuit on June 6, 2025.

reassess the validity of an issued patent based on prior art. The standard for granting review of an *ex parte* reexamination is whether the prior art cited presents a "substantial new question of patentability"—that is, whether the petition raises a new issue of patentability on prior art not previously considered during the original examination. 35 U.S.C. § 304. Once a request is granted, the procedure of an EPR looks virtually identical to the original examination of the patent, wherein an examiner makes rejections over prior art and the inventor may make remarks or amendments to overcome those prior art rejections. Additionally, once the initial request is submitted, the examination is conducted exclusively by the examiner and the patentee—hence the term "ex parte."

There is a far greater chance of an EPR being granted by the PTO than an IPR being instituted by the PTAB. Reexamination is granted 92.6% of the time. (https://www.uspto.gov/sites/default/files/documents/ex_parte_historical_stats_.pdf). However, the opportunity for the petitioner to participate in the proceedings has made IPRs a more attractive avenue than EPRs historically. Such was the case when Murata filed its IPRs in February 2025, prior to the significant upheaval in March 2025 and beyond.

However, presently an EPR remains the only practical alternative for Murata's prior art challenges. As previously explained, Murata expected the merits of its prior art challenges to be weighed by the PTAB. That turned out not to be the case.

Accordingly, Murata expeditiously filed a request for an EPR, which due to the upheaval at the PTAB, may provide a much-needed alternative to the now-volatile IPR process. *See* Ex. D ("USPTO Ex Parte Reexamination Could Become More Popular," https://www.law360.com/articles/2374080).

Not wishing to waste any time, Murata was able to pivot its arguments from an IPR petition to an EPR request within less than two weeks. Murata's EPR request, like its IPR petition, challenges every Asserted Claim of the single Asserted Patent in this case. The Patent Office must make a decision whether to grant or deny the request for reexamination within three months of the filing of the request—in this case, by November 10, 2025, which is less than a month difference from the originally-expected institution decision by the PTAB. The Patent Office will grant the entire request for reexamination if it finds even one substantial new question of patentability for one claim (which Murata believes is clearly shown by the prior art it is raising).

Further, if the Patent Office finds that the prior art raised in Murata's request invalidates the claims, GTRC cannot amend its claims to overcome the prior art, as it might otherwise do in an ordinary examination, since its patent has already expired. In such a case, the '914 Patent would be invalidated, and this case would be completely disposed of.

Thus, Murata moves this Court to stay pending the duration of the EPR. As explained below, the traditional factors considered by the Court weigh just as much in favor of a stay for the EPR as they did for the IPRs.

## II.    LEGAL STANDARD

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to stay a district-court action pending the conclusion of a related PTO proceeding." *Doubleday Acquisitions LLC v. Envirotainer AB*, No. 1:21-CV-03749-SCJ, 2022 WL 18778991, at *3 (N.D. Ga. June 3, 2022) (citing *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988)). "[M]any courts have reasoned that a stay pending a related PTO administrative proceeding should be liberally granted, especially when the PTO's review may assist the court in disposing of the civil action." *Id*; *see also Gould v. Control Laser Corp*., 705 F.2d 1340, 1342 (Fed. Cir. 1983)("One purpose of the reexamination procedure is to eliminate trial of [validity] (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)").

"Ultimately, the court must determine whether 'the benefits provided by staying the litigation outweigh the potential drawbacks.'" *Id.* (quoting *IP Co., LLC v. Tropos Networks, Inc.*, No. 1:06-CV-0585-CC, 2014 WL 12622444, at *2 (N.D. Ga. Mar. 5, 2014)). "In balancing the benefits and difficulties, courts consider three

factors: (1) whether discovery is complete and a trial date has been set; (2) whether a stay will simplify the issues in the case; and (3) whether a stay would unduly prejudice or present a tactical disadvantage to the nonmovant." *Interface, Inc. v. Tandus Flooring, Inc.*, No. 4:13-CV-46-WSD, 2013 WL 5945177, at \*4 (N.D. Ga. Nov. 5, 2013) (internal quotations omitted). Additionally, courts have considered "whether the stay . . . will reduce the burden of litigation on the litigants or the court. *Doubleday Acquisitions*, 2022 WL 18778991, at \*3 (citing *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1309 (Fed. Cir. 2014)).

Courts consider the same factors for a stay regardless of whether the parallel PTO proceeding is an IPR or an EPR; the analysis is identical. *Compare Doubleday Acquisitions*, 2022 WL 18778991, *with IP Co., LLC v. Tropos Networks, Inc.*, No. 1:06-cv-00585, Dkt. 72 at 4 (N.D. Ga. August 16, 2007).

## III.   ARGUMENT

All of the relevant factors weigh in favor of granting a stay. The case is undisputably in its early stages—the earliest possible stage for a motion of this kind. The EPR has a high likelihood of completely resolving—or at the very least drastically simplifying—all issues in this case. GTRC will not be unduly prejudiced by a stay. Finally, the stay will reduce the burden of litigation on the litigants and the Court.

**A.    The case is in its early stages.**

This factor—"whether discovery is complete and a trial date has been set"—indisputably weighs in favor of a stay.  *Tandus Flooring*, 2013 WL 5945177, at *4 (internal quotations omitted).  Discovery has not opened, let alone ended, and there is no trial date set.  This is the earliest possible stage of a case in which Murata could have filed the present Motion.  Courts in this district regularly stay cases that are further along.  *See Doubleday*, 2022 WL 18778991, at *4.

In opposing Murata's initial motion to stay, GTRC did not deny that the case was in its early stages and that this factor weighed in favor of granting a stay.  Dkt. 21 at 14.  The case has not progressed since then.  It is in the same stage—prior to the beginning of discovery and with no trial date set.  Since the case has not moved forward since the initial motion to stay, this factor still undisputably weighs in favor of a stay.

**B.    There is a high likelihood that a stay will completely resolve or at least drastically simplify all issues in this case.**

The EPR will likely completely resolve—or at least drastically simplify—all issues in this case, including the issues for which Murata moves for dismissal in its Motion to Dismiss.

In the context of EPRs, other Courts in this District have found that there is likelihood of simplification when "all claims of the patents are being reexamined" based on "the statistics published by the USPTO" and the "impact that the potential

cancellation or amendments of the patents would have on the [litigation]." *Tropos Networks*, No. 1:06-cv-00585, Dkt. 72 at 4. The USPTO's own statistics show there is a 92.6% chance that the reexamination request is granted—which is even higher than the institution rates for IPRs prior to the significant upheaval caused by the PTAB's new procedures. (https://www.uspto.gov/sites/default/files/documents/ ex_parte_historical_stats_.pdf).

Once the request is granted, there is ***certainty*** that this litigation will benefit from its final outcome, either through the complete resolution of the case or by the clarification of the claim scope through further prosecution, which will aid both discovery and claim construction at the very least. To start, there is a high likelihood that all or some claims will be cancelled. Murata's prior art challenges are strong on their merits, as demonstrated by GTRC's avoidance of responding substantively to Murata's IPR petitions. And if none of the claims are not confirmed (which Murata believes is likely to the be the case), then the entire litigation can be resolved prior to discovery. *Mueller Water Products, Inc. et al v. Victaulic Company*, 1:12-cv-03446-JEC, Dkt. 27 at 7 ("The USPTO's resolution of these issues prior to discovery will potentially save substantial time and effort and might lead to settlement or dismissal of the case").

The likelihood of cancellation of claims is higher in this case because GTRC's patent has already expired. Normally, in prosecution, a patentee may overcome an

examiner's rejection by dropping the claim, making remarks clarifying the claim scope, or amending the claim to get around the prior art. The last option, amendment, is not available for a patent that has expired. Once the EPR begins, GTRC will be unable to amend its claims to avoid rejections by the examiner. If the examiner rejects any claims, GTRC may only disclaim its rejected claims or make statements clarifying the claim scope. As a result, even if the claims are confirmed, "the Court will benefit from the prosecution history developed before the USPTO." *Adair v. Boat Dock Innovations, LLC, et. al.*, No. 1:12-cv-01930-SCJ, Dkt. 43 at 7 (N.D. Ga. February 27, 2013); *Tropos Networks*, No. 1:06-cv-00585, Dkt. 72 at 4 ("[t]he Court will benefit from the expertise of the USPTO in reviewing prior art, the parties and the Court will avoid the potentially wasteful expenditure of resources (reducing the burden of litigation), and the reexamination proceedings may streamline the claims remaining for determination in the instant litigations").

And in the very unlikely event that the EPR request is denied altogether— only a 7.4% chance—the stay will be only three months. *Epic Tech, LLC v. Pen-Tech Assocs., Inc*., No. 1:20-CV-2428-MHC, 2020 WL 8258736, at *4 (N.D. Ga. Sept. 28, 2020) (quoting *TAS Energy, Inc. v. San Diego Gas & Elec. Co*., No. 12CV2777-GPC BGS, 2014 WL 794215 (S.D. Cal. Feb. 26, 2014)); *Doubleday*, 2022 WL 18778991, at *4.

Finally, to the extent that GTRC attempts to argue that the request for an EPR is likely to fail based on the Acting Director's discretionary denial of the IPRs, such an argument is misguided. The merits of Murata's prior art challenges have not yet been considered by the Patent Office. Neither the PTAB nor the Acting Director considered the merits of Murata's prior art grounds. And GTRC knows that Murata's prior art is strong; despite having the opportunity to challenge the merits of the grounds, GTRC chose not to, electing to challenge the IPRs on procedural grounds only. This highlights the strength of the merits.

In short, there is a high likelihood that the PTO will grant the request for the EPR, and regardless of the outcome, the potential benefits of a stay outweigh the potential drawbacks. Thus, this factor weighs in favor of a stay.

## C.    A stay will not unduly prejudice GTRC.

A stay pending the EPR of the '914 Patent will not unduly prejudice GTRC. It is well-settled that the reasonable delay caused by a stay, without more, does not justify denying the stay. That is, "the mere fact that delay will necessarily result from the stay does not mean that there is *undue* prejudice." *Doubleday*, 2022 WL 18778991, at *3 (emphasis in original). To determine if there is undue prejudice, courts in this District have historically looked to four "sub-factors": "(1) the timing of the review request; (2) the timing of the request for stay; (3) the status of the review proceedings; and (4) the relationship of the parties." *Id.* at *3 (citing *Epic*

13

*Tech*, 2020 WL 8258736).  Here, all four sub-factors demonstrate that no undue prejudice will result from a stay.

Concerning the first two sub-factors—the timing of the review request and motion to stay—Murata was diligent, not dilatory, in both (1) filing its IPR petitions and (2) pivoting those validity challenges to a more suitable procedural mechanism, namely an EPR challenge, following the PTAB's upheaval in recent months.  Courts in this District have found no undue prejudice under such circumstances.  In *Doubleday*, the court observed that "Defendants requested the *inter partes* review only three months after Plaintiff filed this lawsuit and about a week after they answered.  Defendants then moved to stay only one month later."  *Id.* at *3.  The Court found that "Defendants . . . not delay[ing] these actions" favored granting the stay.

Here, exactly as in *Doubleday*, Murata has been diligent at every turn.  Murata filed its IPR petitions three months after GTRC filed this action.  Murata filed its original motion to stay a little over one month after the filing of its petitions and **before** it has answered.  Once the Acting Director issued the discretionary denial on procedural grounds, Murata moved quickly, pivoting its invalidity challenge to an alternate mechanism within ten days—such that the then-expected IPR institution decision and now-expected EPR decision are due within less than a month from each other—and Murata also moved this Court again to stay the action on the same day.

Murata's diligence indicates that it is not attempting to create a tactical advantage by unduly prejudicing GTRC.  It is seeking to resolve the issues of validity in the alternative mechanisms at the Patent Office, possibly resolving this entire case before the parties engage in expensive and burdensome discovery.  That Murata did not delay in any of its filings indicates a lack of undue prejudice.

Concerning the third sub-factor, while the PTO has not yet granted the EPR request, such is not dispositive of this factor or the analysis as a whole.  *Id.* at *4; *Epic Tech*, 2020 WL 8258736, at *4.  For example, Courts in this District frequently grant stays for IPR petitions that have not yet been instituted by the PTAB, and the same should apply in the context of an EPR. This single sub-factor, on its own, does not control the analysis because even if the PTO declines to proceed with the review, "the stay will not have delayed the litigation for a long time."  *Doubleday*, 2022 WL 18778991, at *4 (granting a stay for an IPR that had not been instituted yet); *Epic Tech*, 2020 WL 8258736, at *3 (same).

And this reasoning applies doubly to EPRs, since the time to a review decision for an EPR is half the length of the time to an IPR institution decision—only three months for EPRs compared to an IPR's six-month delay.  *See Epic Tech*, 2020 WL 8258736, at *3 ("The decision as to whether to institute IPR is now ***just over three months away***, so the duration of the stay will be short if review is denied").  To the extent that the Court rules on the motion to stay prior to the PTO's decision to grant

the EPR, the time to a review decision will only be a few weeks.[4]  In any case, this sub-factor does not turn the analysis against a stay.

Concerning the fourth sub-factor, GTRC will not be prejudiced by a stay because there is no "need for an expeditious resolution of [the] claims." *VirtualAgility*, 759 F.3d at 1318.  Since GTRC is not a competitor of Murata's and has not moved for injunctive relief—nor could it since the '914 Patent is expired— any delay is only a delay in the "realization of [monetary] damages." *Id.*  Under this sub-factor, courts often look to whether parties are "market competitors" because such may indicate whether there will be more harm caused by the stay than the mere delay of monetary damages.  *Doubleday*, 2022 WL 18778991, at *4; *Epic Tech*, 2020 WL 8258736, at *4.  By its own admission, "GTRC does not itself commercialize intellectual property," and thus it is not a market competitor of Murata.  Complaint, ¶ 5.  Even if GTRC could show that it was somehow a competitor of Murata's, the '914 Patent is expired, and all technology therein is now in the public domain.  Indeed, it had already expired before GTRC ever contacted

---

[4] Briefing on this motion is set to close on September 5, 2025. The PTO's decision to grant the EPR is due five weeks later.  Even if the Court were to rule on the motion the day the briefing closed, the stay would only be five weeks assuming that the request is denied—which as previously explained, is highly unlikely (a mere statistical chance of 7.4%).  To that end, it would make much more sense for the Court to simply reserve its ruling for another a few more weeks to see how the PTO rules rather than to deny a stay motion only for the parties to engage in renewed briefing a few weeks later after the PTO rules on the EPR request.

Murata and well before the filing of this action. Since the only prejudice caused by the stay will be (in the event GTRC prevails) the delay in GTRC's realization of monetary damages, there is no undue prejudice caused by the delay.

The balance of the sub-factors shows that GTRC will not be unduly prejudiced by a stay. Accordingly, this factor weighs in favor of staying the case.

### D.    A stay would limit the burden of litigation on the Court and the parties.

Overall, the issue simplification and judicial efficiencies described above would substantially reduce the burdens on the Court and the parties. If there is no stay, the parties will be litigating the validity of the '914 Patent while the PTO is in a parallel proceeding that could completely invalidate the patent. The best way to avoid the expenditure of duplicative resources is to stay the case now and reduce—or completely eliminate—unnecessary burdens of litigation on the parties and the Court.

## IV.    CONCLUSION

All of the factors in the Court's analysis weigh in favor of granting the stay. The case is in its early stages—the earliest stage possible. There is a high likelihood that the EPR will completely dispose of, or at least simplify, the issues in this case. GTRC will not be unduly prejudiced by a stay. And a stay will reduce the burden of litigation on the parties and the Court. For the foregoing reasons, Murata respectfully requests that the Court stay this case pending the resolution of the EPR.

17

DATED:  August 8, 2025

By: */s/ Jason T. Lao*

**Richard Miller**
Georgia Bar No. 065257
**Alan White**
Georgia Bar No. 410546
Ballard Spahr LLP
999 Peachtree Street NE, Suite 1600
Atlanta, Georgia 30062
Telephone: 678-420-9340
Email: millerrw@ballardspahr.com
        whiteda@ballardspahr.com


**Jason T. Lao**
Cal. Bar. No. 288161
jason.lao@haynesboone.com
HAYNES AND BOONE, LLP
600 Anton Blvd., Suite 700
Costa Mesa, CA 92626
(949) 202-3000
*Pro Hac Vice*

**Dylan Freeman**
TX Bar No. 24131314
dylan.freeman@haynesboone.com
HAYNES AND BOONE, LLP
2801 N. Harwood Street, Suite 2300
Dallas, TX 75201
(214) 651-5000
*Pro Hac Vice*

*Attorneys for Defendants Murata*
*Electronics North America, Inc. and*
*Murata Manufacturing Co., Ltd.*

## <u>CERTIFICATE OF COMPLIANCE WITH LR 5.1</u>

Pursuant to LR 7.1(D), I HEREBY CERTIFY that this brief has been prepared with one of the font and point selections approved by the Court in LR 5.1.

Date: August 8, 2025                      <u>*/s/ Jason T. Lao*</u>
                                          Jason T. Lao

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this day, a true and correct copy of the foregoing document was served by filing the same via the Court's CM/ECF system, which will provide notice of the filing of same to all counsel of record.

Date: August 8, 2025                      <u>*/s/ Jason T. Lao*</u>
                                          Jason T. Lao