Filed: June 16, 2025

UNITED STATES PATENT AND TRADEMARK OFFICE

———————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————————

MURATA MANUFACTURING CO., LTD,
Petitioner,

v.

GEORGIA TECH RESEARCH CORPORATION,
Patent Owner.

———————————

IPR2025-00383
Patent 7,489,914

———————————

PATENT OWNER'S
DISCRETIONARY DENIAL BRIEF

## **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................3

II.     FACTUAL BACKGROUND ...............................................................5

   A. Origin of the invention and spin-out from university to start-up ...................5

   B. Murata's interest in JMD and its intellectual property .....................................6

   C. GTRC's enforcement of the '914 patent and Murata's attempts to delay
      litigation .......................................................................................8

   D. Murata's IPR filings show they were not dealing fairly with GTRC............11

III.    THE TWO PETITIONS SHOULD BE DISCRETIONARILY DENIED ....15

   A. The settled expectation of the parties weighs strongly in favor of
      discretionary denial................................................................16

      1.  Murata waited sixteen years to challenge the '914 patent .......................17

      2.  The claims were in force from 2009 until they expired in 2024.............20

   B. The district court is a better forum to develop and consider the evidence
      necessary to evaluate the validity challenges presented by the Petition .......22

   C. The *Fintiv* Factors favor discretionary denial ...............................................28

      1.  Factor 1: Neutral because it is unknown whether the district court will
          grant Petitioner's motion to stay................................................................28

      2.  Factors 2–4 do not favor discretionary denial, but only because of
          Murata's unilateral actions ...................................................................28

      3.  Factor 5: Identical parties in the parallel proceedings favor discretionary
          denial ...................................................................................29

      4.  Factor 6: Other relevant circumstances, including the settled expectations
          of the parties and the burdens this case will put on the Board, weigh in
          favor of discretionary denial.................................................................30

      5.  Balancing *Fintiv* Factors.........................................................................30

IV.     CONCLUSION.............................................................................30

## PATENT OWNER'S EXHIBIT LIST

| Exhibit No. | Description |
|---|---|
| 2001 | Declaration of George White |
| 2002 | JMD-Murata Mutual Confidentiality Agreement (the "NDA") |
| 2003 | April 2007 Murata-JMD Meeting Presentation |
| 2004 | Information Disclosure Statement in Murata Application No. 12/729,277 (filed Jan. 24, 2012) |
| 2005 | Third Party Submission in Murata Application No. 14/748,623 (filed Apr. 11, 2016) |
| 2006 | Information Disclosure Statement in Murata Application No. 16/694,053 (filed Nov. 25, 2019) and List of References cited by applicant and considered by examiner (filed Jan. 25, 2021) |
| 2007 | Letter to Murata Manufacturing Co., Ltd. Re: Murata's Infringement of U.S. Patent No. 7,489,914 (Aug. 22, 2024) |
| 2008 | Joint Motion to Stay Deadlines for Rule 26 Conference and Joint Preliminary Report and Discovery Plan, *GTRC v. Murata Electronics North America, Inc.*, No. 1:24-cv-05268-JPB (N.D. Ga. April 24, 2025), ECF No. 19 |
| 2009 | U.S. Patent 7,06,8124 to White et al. (issued June 27, 2006) |
| 2010 | U.S. Patent Pub. No. 2004/0000425 A1 White et al. (published Jan. 1, 2004) |
| 2011 | U.S. Patent 6,987,307 to White et al. (issued Jan. 17, 2006) |
| 2012 | U.S. Patent 8,345,433 to White et al. (issued Jan. 1, 2013) |
| 2013 | U.S. Patent 7,808,434 to White et al. (issued Oct. 5, 2010) |
| 2014 | U.S. Patent 6,900,708 to White et al. (issued May 31, 2005) |
| 2015 | U.S. Patent Pub. 2005/0248418 to White et al. (published Nov. 10, 2005) |
| 2016 | Email from Murata counsel dated Dec. 12, 2024 |

IPR2025-00383

Pursuant to the Director's March 26, 2025 Memorandum Regarding Interim Processes for PTAB Workload Management (the Workload Memo),[1] Patent Owner Georgia Tech Research Corporation (GTRC) files this Request for Discretionary Denial of Institution for two separate IPR petitions challenging the same claims of a single patent: IPR2025-00383 (the 383 IPR) and IPR2025-00384 (the 384 IPR).[2]

## I.    INTRODUCTION

Each of the two petitions is a poster child for exercising discretion to better allocate the PTAB's resources elsewhere. The challenged patent, 7,489,914 (the '914 patent or simply "the patent"), issued in 2009. , about sixteen years before Petitioner Murata Manufacturing Co., Ltd. (Petitioner or Murata) filed these

---

[1] https://www.uspto.gov/sites/default/files/documents/InterimProcesses-PTAB-WorkloadMgmt-20250326.pdf.

[2] This brief addresses both proceedings, and an identical copy (other than case style and headers) is filed in each proceeding. Papers and exhibits that are not identical in each proceeding are referenced by the proceeding number followed by the document. For example, the different petitions are "383 IPR Pet." and "384 IPR Pet." The same exhibits are filed in both proceedings (except for a few of Petitioner's exhibits that are only filed in the 384 IPR), so generally no prefix is used to refer to them.

challenges. But long before the patent was even issued, the inventors (through their start-up) were negotiating with Murata about a potential license to the technology disclosed and claimed in the patent application. Murata's awareness of the application that issued as the '914 patent and failure to seek early review of the now-expired patent both favor denial and outweigh many other considerations. *See iRhythm Technologies, Inc. v. Welch Allyn, Inc.*, IPR2025-00363, Paper 10, 2–3 (June 6, 2025).

These parallel petitions will also present unusual burdens on both the PTAB and the parties. A key issue in this case will be secondary considerations of nonobviousness, which must be considered in any obviousness analysis. Murata undisputedly developed its products (that GTRC asserts infringe) after their meetings with the inventors to discuss the patented technology. Murata thus likely possesses highly persuasive evidence of secondary considerations of nonobviousness. But that fact also creates a constellation of discovery challenges that are not suitable for resolution at the PTAB. The pending district court action, with its robust discovery process, is a superior venue for developing this information, which is critical to the secondary considerations that must be considered in any obviousness analysis. But Murata has unilaterally *blocked* such

IPR2025-00383

discovery under the district court's local rules by filing a motion to dismiss the complaint.[3]

If IPR is instituted, GTRC will be forced to seek that discovery here, imposing a significant burden on PTAB resources. Further, such discovery would be limited by the PTAB's statutory time and procedural constraints. These limits therefore highly burden the PTAB while shortchanging GTRC's opportunity to develop and present objective evidence of nonobviousness of its valuable, patented technology. Meanwhile, the patent has already expired, limiting the public benefit of any decision by the PTAB.

Thus, the Petitioner's unique relationship to the challenged patent presents issues that are better suited for consideration by an Article III court rather than consuming the PTAB's limited capacity. GTRC thus asks the Director to exercise its discretion to deny institution under 35 U.S.C. § 314(a).

## II.    FACTUAL BACKGROUND

### A.    Origin of the invention and spin-out from university to start-up

The story of the '914 patent—and of these IPRs—began in the early 2000s at The Georgia Institute of Technology (Georgia Tech), one of the top public

---

[3] GTRC believes that motion is meritless, but it is undisputed that no discovery can occur until *after* the district court rules on the motion—whenever that is.

IPR2025-00383

research universities in the country. There, a group of faculty and student researchers developed a portfolio of cutting-edge technologies related to embedding circuit elements into organic materials to create multi-band, multi-layer radio-frequency (RF) devices with improved performance, in a smaller package, and at less cost. Among the many patents issued from the group of inventors is the '914 patent challenged in each of the two petitions here. Following Georgia Tech's standard procedures, these inventions were assigned to GTRC, which manages Georgia Tech's invention portfolio, licensing affairs, and patent decisions.

In 2004, several of the inventors founded a start-up company, Jacket Micro Devices (JMD), to commercialize their inventions. The application for the '914 patent was filed in April 2005, claiming priority to prior applications filed in 2003 and 2004. Ex-1001 at (22), (60), (63). The application published in November 2005 as US 2005/0248418 A1 (the '418 publication). Ex-1001 at (65). Through GTRC, JMD obtained an exclusive license to the inventions disclosed in the various patent applications that had been filed on the founders' inventions, including those disclosed in the '418 publication/'914 patent. Decl. of George White, Ex-2001 ¶ 4.

**B.    Murata's interest in JMD and its intellectual property**

In 2006, shortly after the November 2005 publication of the application, Petitioner Murata and JMD began a multi-year period of discussions about possible

business collaboration to manufacture and sell multi-band RF devices using JMD's intellectual property. Ex-2001 ¶ 5. At that time, Murata was (and is today) a large, established, electronics component and module supplier for various applications, including mobile telecommunications, based in Japan. In June 2006, Murata officials flew to Atlanta, Georgia, to visit with JMD officers, and the parties entered a "Mutual Confidentiality Agreement," i.e., a non-disclosure agreement (NDA), to allow the parties to assess JMD's intellectual property and proposed organic-based products on a confidential basis. Ex-2001 ¶ 6; Ex-2002 (un-executed copy of NDA). JMD officials visited Murata in Japan in August 2006 and January 2007, during which they discussed licensing JMD's patents and applications with Murata executives. Ex-2001 ¶¶ 7–8.

Continuing Murata's interest in the technology, Murata executives returned to Atlanta in April 2007. Dr. White, JMD's Chief Technology Officer, testifies that he co-authored and gave a presentation about the technology to the visiting Murata executives, a copy of which is filed at Ex-2003. Ex-2001 ¶¶ 9–10. That presentation specifically identifies the application that eventually issued as the '914 patent. Ex-2001 ¶ 10; Ex-2003, 27 (Title: "Multi-band RF transceiver with passive re-use in organic substrates"). And Murata reiterated its interest in an arrangement where it would manufacture and sell RF products that incorporated technology disclosed in the '418 Publication. Ex-2001 ¶ 9.

IPR2025-00383

Discussions between Murata and JMD continued into 2008, but no agreement was reached. JMD eventually ceased operations shortly before the '914 patent issued. Although the proposed business arrangement between Murata and JMD never materialized, Murata's use of GTRC's patented technology did.[4]

Later, Murata also submitted information disclosure statements during prosecution of its own applications, citing applications within the '914 patent's family of related applications. *E.g.*, Ex-2004; Ex-2006. Murata also had actual notice of another GTRC patent that shares parent application with the '914 patent by a third-party submission in 2016. Ex-2005, 15 (citing the '307 patent); Ex-2011, 1:20-22 ('307 patent cross-referencing the '313 application); Ex-1001, (60) (claiming priority to the '313 application).

### C.    GTRC's enforcement of the '914 patent and Murata's attempts to delay litigation

In the years after the negotiations with JMD ended, Murata continued to take steps to develop and commercialize multi-band, multi-layer RF devices. By 2024, GTRC had become aware of Murata's products and determined that Murata was infringing the '914 patent by making and selling multiple configurations of modules—apparently enjoying significant success in doing so. *See, e.g.*, Ex-1035 ¶¶ 118, 122 (depicting accused Murata modules used in Apple, Samsung, and

---

[4] The exclusive license to the '914 patent was terminated by March 2013.

IPR2025-00383

Google handsets). Murata had also recently approached GTRC to express interest in several of GTRC's licensable technologies (unrelated to the '914 patent). GTRC therefore chose to approach Murata directly about its infringement to seek a negotiated resolution. See Ex-2007 (Aug. 22, 2024, Letter to Murata).[5]

     Murata responded to GTRC (through counsel) a few days later and requested additional time to investigate the allegations. Then Murata requested the parties enter an NDA before exchanging information and asked for *more* time to respond.

---

[5] In the district court, Murata complained that discussion of this letter and facts about the settlement negotiations are a "violation" and "breach" of Fed. R. Evid. 408 as part of an "improper smear campaign" against Murata. Reply in Support of Motion to Stay, at 1 & n.1, *GTRC v. Murata Electronics North America, Inc.*, No. 1:24-cv-05268-JPB (N.D. Ga. May 21, 2025), ECF No. 24. But Rule 408 only makes evidence inadmissible for certain purposes; it is not a blanket shield for those facts. The rule "bars compromise evidence only when offered as evidence of the 'validity,' 'invalidity,' or 'amount' of the disputed claim;" the same evidence can be admitted for other purposes. Fed. R. Evid. 408, advisory committee's note to the 2006 amendment. These facts are not offered to prove any disputed claim about validity (or infringement) but to shed light on the history of the parties' dealings and how they bear on the Director's discretion to deny institution.

IPR2025-00383

GTRC agreed to both requests but stated that it required some sort of good faith offer to resolve the dispute by November 8. On that date, instead of an offer, Murata's counsel asserted a purported defense to the claim and stated it should be able to provide a settlement offer if GTRC could "help [Murata] get 'over this hurdle'" (the alleged defense). Four days later, GTRC responded to Murata's letter explaining that the alleged defense lacked merit and requesting a good faith offer to resolve the dispute by the end of the week, November 15. On that day, Murata provided only more purported defenses and excuses to GTRC instead of a settlement offer. Given that nearly three months had passed since GTRC had contacted Murata to broach a negotiated resolution, and having gotten nowhere, GTRC filed an infringement action in the Northern District of Georgia on November 17, 2024. Ex-1035 (Complaint); Ex-1041 (docket sheet).

Murata next delayed by stalling the service of the complaint. Both during and after filing the action, GTRC asked Murata's legal counsel, Mr. Joseph Keating, if Murata would waive service of the complaint.[6] He ignored those

---

[6] Mr. Keating was the representative of Murata communicating with GTRC's counsel following the August 2024 letter. He had also represented Murata before the Office over many years, at least since 2012. Ex-2004, 3 (2012 signature); Ex-2005, 32 (2016 notice mailed to Mr. Keating's firm); Ex-2006, 4 (2019 signature).

IPR2025-00383

requests at first. Then, around December 10, Murata's district court litigation counsel, Mr. Jason Lao of Haynes and Boone, LLP, contacted GTRC saying he had been retained by *only* the U.S. entity, Murata Electronics North America, Inc. ("MENA," the identified real party-in interest here), and requested an extension of time to answer. But Mr. Lao stated he had *not yet* been retained by Murata Manufacturing Co., Ltd. (the Petitioner here), the Japanese entity, as of then (December 12). Notably, Haynes and Boone is the same firm representing Murata in these IPRs.

Eventually, after multiple follow-ups, Mr. Lao finally informed GTRC on January 7, 2025, that he was also litigation counsel for the Japanese Petitioner and offered to accept a waiver of service for it as of that date *if* GTRC would agree to synchronize both defendants' answer deadlines, which would have been April 7 (under Fed. R. Civ. P. 4(d)(3)). The parties eventually agreed that both Murata entities would respond to the complaint by March 31 (subsequently extended to April 2). Ex-1041, 1. On February 10, Murata filed the two IPR Petitions at issue.

### D. Murata's IPR filings show they were not dealing fairly with GTRC

Despite professing it needed additional time to evaluate and negotiate a potential resolution of the dispute between the parties, Murata's IPR filings and actions show otherwise.

*First*, the declaration of Heather Stewart, Ex-1039 in the 384 IPR, shows that Murata began these petitions shortly after receiving GTRC's letter. Murata relies on the Stewart declaration to attempt to show the main reference in that proceeding qualifies as prior art. *See* 384 IPR Paper 2 (Pet.), 20, 22–23. Stewart's signature on the document indicates it was executed on "September 25, 2024." Ex-1039, 4. So less than five weeks after GTRC's August 22 letter to Murata, Murata had already prepared and finalized a fully executed declaration from one of its proffered witnesses to use in these proceedings, though it was not filed until four months later. Meanwhile, Murata was telling GTRC it wanted to enter an NDA to allow it to share financial information, though it never actually shared any.

*Second*, the Power of Attorney that Murata filed in these IPRs was signed on November 12, 2024, *see* Paper 1 (in both proceedings), just *four days after* Murata had suggested it would provide an offer to resolve the dispute. Murata Manufacturing Co. Ltd.'s "President & CEO" appointed all "Practitioners associated with Customer Number 27683, as [Murata's] attorneys" for an IPR of the '914 patent. *Id.* According to USPTO records, that customer number is associated with Hayes and Boone. So as of November 12, the Japanese Murata entity had appointed Haynes and Boone as its representative for a planned IPR.

Then four weeks later, on December 10, Mr. Lao from the *same firm* informed GTRC he was representing the U.S. defendant—real party-in-interest

MENA—but he maintained that he did not yet represent the Japanese defendant, Petitioner Murata. Consequently, he stated he was not authorized to receive the waiver of service form or deliver it to the Petitioner. *See generally* Ex-2016 (email from Mr. Lao dated Dec. 12, 2024). It may have been technically true that Murata Japan had not yet appointed Mr. Lao for the matter, but Mr. Lao and others at Haynes and Boone have represented Murata in *every patent litigation* filed in the district courts against Murata since 2018.[7] Given that history and that Murata had already engaged other patent lawyers from the same firm to represent it in these IPRs, Mr. Lao's delayed "engagement" as counsel for the Japanese entity suggests a stratagem to delay the waiver of service (and, ultimately, the litigation) for a tactical advantage.

---

[7] *Modulus Systems LLC v. Murata Electronics North America, Inc.*, No. 2:23-cv-00220-JRG (E.D. Tex. filed May 18, 2023), ECF 12 (Answer for MENA, the U.S. entity, signed by Mr. Lao); *MIMO Research, LLC v. Murata Electronics North America, Inc. and Murata Manufacturing Co., Ltd.*, No. 5:22-cv-00073, (E.D. Tex. filed June 15, 2022), ECF 14 (notice of appearance by Mr. Lao for both entities); *Inergetic AB v. Murata Electronics North America, Inc.*, 3:18-cv-01686-N (N.D. Tex. filed June 27, 2018), ECF 12 (Answer signed by Haynes and Boone).

IPR2025-00383

*Third*, the declaration of Dr. Hall-Ellis (Ex-1038 in the 384 IPR) was signed on February 6, 2025, but almost all her attachments were retrieved between January 2 and 3, 2025. Ex-1038, 44 ("1/3/2025, 4:53 PM" in footer of Attachment 1B), 46 ("1/2/25, 10:35 AM" in header of Attachment 1C), 50 ("1/2/25, 10:33 AM" in header of Attachment 2A), 54 ("1/2/25, 10:36 AM" in header of Attachment 2B), 57 ("1/3/2025, 7:58 PM" in footer of Attachment 2C), 59 ("1/3/2025, 7:58 PM" in footer of Attachment 2D), 62 ("1/3/2025, 7:59 PM" in footer of Attachment 2E). These printouts form the basis of her opinions that the referenced documents were allegedly publicly available by the patent's critical date. This is further evidence that Murata was far along the path for its IPRs by early January—three months before its Answer would be due in the district court action (and again, while GTRC was being told that the Petitioner did not yet have approved counsel).

*Finally*, when Murata finally responded to the complaint on April 2, it did so by filing a motion to dismiss for failure to state a claim—raising a § 101 defense—rather than filing an Answer. Ex-1041, 1. Under the district court's local rules, this unilateral action prevents discovery from opening and the parallel action from moving forward "until Murata answers the complaint, which will not occur unless and until the Court denies Murata's motion to dismiss." Ex-2008, 2; *see also* LR 26.2, NDGa.

IPR2025-00383

Murata provides a cursory argument against discretionary denial under 35 U.S.C. § 314(a) and *Fintiv* in each petition. Murata contends "the district court case is in its very early stages, without a scheduling order or opening of fact discovery, as Patent Owner just filed the complaint in November 2024 … Petitioner has diligently worked to prepare the petitions." 383 IPR Paper 2, 90; 384 IPR Pet., 90. But Murata engineered that delay by (1) leading GTRC to believe it was interested in a negotiated resolution, when Murata was in fact preparing its petitions; (2) delaying the waiver of service even though Haynes and Boone was already IPR counsel and there was no genuine doubt Haynes and Boone would again represent Murata in the litigation; and (3) filing a meritless motion to dismiss, instead of an Answer, to prevent any discovery from going forward (and simultaneously moved to stay the litigation pending the IPRs). Thus, the stage of the district court case is a result of Murata's litigation tactics—not the ordinary progress of litigation proceedings.

## III.    THE TWO PETITIONS SHOULD BE DISCRETIONARILY DENIED

The Board's authority to deny institution under 35 U.S.C. § 314(a) is both clear and broad. The six non-exclusive factors identified in *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11, at 6 (P.T.A.B. Mar. 20, 2020) (precedential), have provided a roadmap for when the Board should decline to institute IPRs in favor of parallel district court proceedings. On March 24, 2025, the Office issued new

IPR2025-00383

guidance clarifying how the Board will apply the precedential *Fintiv* and *Sotera* decisions to parallel proceedings ("2025 *Fintiv* Guidance").[8]

And the Director's March 26 guidance provides that "to facilitate [a new] bifurcated approach, the USPTO will permit parties to file separate briefing on requests for discretionary denial of institution." Workload Memo, 2. That memo allows Patent Owners to address grounds for discretionary denial including the "discretionary considerations enumerated in existing Board precedent" and "all relevant considerations" that may bear on the Director's discretion, including several specifically identified in the memo. *Id*.

GTRC respectfully submits that discretionary denial is appropriate for three reasons: (1) the settled expectations of the parties; (2) the particular burdens these two, parallel petitions challenging a single patent will place on the PTAB if instituted; and (3) the *Fintiv* factors also favor discretionary denial of the Petition, when these other considerations are evaluated as part of Factor 6.

### A.    The settled expectation of the parties weighs strongly in favor of discretionary denial

The unique and long history of this patent and the parties' discussions about it favor a discretionary denial of institution. Workload Memo, 2 (the "[s]ettled

---

[8] https://www.uspto.gov/sites/default/files/documents/guidance_-memo_on_interim_procedure_recission_20250324.pdf.

IPR2025-00383

expectations of the parties, such as the length of time the claims have been in force" is a factor to consider).

### 1. Murata waited sixteen years to challenge the '914 patent

As the Director recently explained, a "Petitioner's awareness of Patent Owner's applications and failure to seek early review of the patents favors denial"—even "outweigh[ing]"other considerations that might weigh against discretionary denial. *iRhythm Technologies, Inc. v. Welch Allyn, Inc.*, IPR2025-00363, Paper 10, 2–3 (June 6, 2025). Here, Petitioner Murata was not only aware of the scope and content of the application that became the '914 patent, but it also actively engaged in negotiations to license it. *See* Ex-2001, ¶¶ 5–10.

Murata's knowledge of the application *or* publication at any point in prosecution would have put them on notice of the scope of the same claims they are challenging today. Claim 1 of the '914 patent has the same scope as the originally filed (and published) claim 4. Ex-1001, claim 1; Ex-1002, 360 ('733 application); Ex-2015, claims 1, 4 ('418 publication). The only amendment to claim 1 simply added the allowable subject matter of dependent claim 4. Ex-1002, 45, 49. Accordingly, Murata's awareness of either the '418 publication or the '733 application would have also put Murata on notice of the scope of the '914 patent's claim 1 that they are now challenging, 20 years later.

IPR2025-00383

As explained above, Murata was directly involved in negotiations with JMD to potentially sub-license and commercialize GTRC/JMD's portfolio related to multi-layer organic laminates between 2006 and 2008. During those ongoing negotiations, JMD executives provided updates on the status of the many applications within the portfolio, again specifically including the application that issued as the '914 patent. Ex-2003, 27 (identifying pending "U.S. non-provisional" titled "Multi-band RF transceiver with passive re-use in organic substrates"); Ex-2001 ¶¶ 9–10. Thus, Murata was not only intimately aware of the patent application and the ultimate scope of claim 1 but was also considering exploiting it.

Additionally, Murata demonstrated its knowledge of the GTRC and JMD portfolio of applications related to the '914 patent by citing them in multiple information disclosure statements (IDS) for its own patent applications. In 2012, Murata submitted an IDS in its application 12/729,277 citing GTRC's Patent 7,068,124. Ex-2004, 1 (Cite No. 2). That patent shares a common "parent" application as the '914 patent. Compare Ex-2009, (63) with Ex-1001, (63). And in 2019, Murata cited Publication Number "20040000425" (filed here as Ex-2010) in an IDS for Murata application 16/694,053. Ex-2006, 1 (Publications Cite No. 1). That publication (which later issued as Patent 7,260,890), also shares a priority claim to a common provisional application as the '914 patent (through US Patent

IPR2025-00383

6,900,708). *See* Ex-2010 ¶ [0001] (claiming priority to 60/391,742); Ex-1001, 1:13 (claiming priority to "U.S. Pat. No. 6,900,708"); Ex-2014, at (60) ('708 patent also claiming priority to 60/391,742).

A third party similarly cited *three* related patents in 2016 in a Third-Party Submission Under 37 CFR 1.290, and the examiner subsequently notified Murata of those references. Ex-2005 at 1 (Cite Nos. 1–3), 32. The cited Patent 6,987,307 claims priority to one of the same provisional applications (60/391,742) as the '914 patent. *Compare* Ex-2011, 1:14–22, *with* Ex-1001 at (63) (both claiming priority to the '313 application); *see also* Ex-2014 at (60) ('313 application claiming priority to the '742 provisional). Cited Patent 8,345,433, titled "Heterogeneous organic laminate stack ups for high frequency applications," was also identified in the April 2006 presentation. *See* Ex-2012, 1:7–10; Ex-2003, 27. And cited Patent 7,808,434 discloses that it is "related to U.S. Pat. No. 6,900,708, filed on Mar. 28, 2003 as application Ser. No. 10/402,315, and entitled 'Integrated Passive Devices Fabricated Utilizing Multilayer Organic Laminates.'" Ex-2013, 1:12–15. The '315 application also claims priority to the same '742 provisional as the '914 patent. *See* Ex-2010 at (60), Ex-1001, 1:11–15 (claiming priority to the '313 application); Ex-2014 at (60) ('313 application claiming priority to the '742 provisional).

In sum, Murata was well-aware of the related applications to the '914 patent for many years based on its negotiations with JMD about potentially developing

technology under a license for the patents. Despite its decision not to move forward with a license, Murata eventually developed its own implementation of the patented technology anyway—without seeking early review of the '914 patent. This favors discretionary denial. *See iRhythm*, Paper 10 at 3.

### 2. The claims were in force from 2009 until they expired in 2024

Second, the claims issued in February 2009—over sixteen years ago. See Workload Memo, 2 (including the "[s]ettled expectations of the parties, such as the length of time the claims have been in force" among the "relevant considerations" for discretionary denial). Moreover, the claims have been in force long enough that the patent has already expired, which also favors discretionary denial. The Federal Circuit has previously held that the Director *can* institute trial on an expired patent. *Apple Inc. v. Gesture Tech. Partners, LLC*, 127 F.4th 364, 368 (Fed. Cir. 2025). But GTRC is not arguing that the Board cannot or must not institute; GTRC is arguing that the Director should exercise its discretion to deny institution under § 314(a). The PTAB's limited resources are better spent on patents having an ongoing

IPR2025-00383

lifespan and broader public impact, especially given the PTAB's current workload and capacity considerations. See Workload Memo at 3.[9]

 There is another kind of settled expectation of the parties at play here as well: the application for the '914 patent was filed and the patent issued long before the America Invents Act and the creation of these *inter partes* reviews. The settled

---

[9] GTRC recognizes that some panels have previously declined to exercise discretion to deny institution of an expired patent. *E.g.*, *Amazon.com, Inc. v. Nokia Technologies Oy*, IPR2024-01139, Paper 11, 11 (Feb. 12, 2025); *Agriculture, Inc. v. Coreva Agriscience LLC*, IPR2024-01014, Paper 15, 24 (Dec. 16, 2024). But those decisions predate the Office's February and March rescission of the prior guidance and newly issued guidance. GTRC has not located authority addressing the exercise of discretion in this situation since the updated guidance. *Cf. Roku, Inc. v. Dolby Int'l AB*, IPR2024-01354, Paper 7, 1 (Apr. 3, 2025) (noting "[n]either party challenges [the PTAB's] jurisdiction over this [expired] patent" and denying institution on the merits); *Samsung Electronics Co., Ltd. v. KP Innovations 2, LLC*, IPR2025-00101, Paper 13, 10 (Murray, APJ, dissenting) (dissenting from panel majority's discretionary denial on alternate basis and stating patent owner's argument that it would be "irreparably harmed" if the expired claims survived an instituted IPR was "unpersuasive").

IPR2025-00383

expectation at the time of its issue was that the only mechanisms to challenge the

'914 patent were *ex parte* and *inter partes* reexaminations. Subjecting this pre-

AIA-issued patent to this newer form of challenge—more powerful and complex

than the earlier possible challenges—therefore would retroactively impair GTRC's

right to be free from this new challenge. In other words, to subject a pre-AIA-

issued patent to IPRs retroactively upsets the inventors' and patent owner's settled

expectations they enjoyed for years before the AIA regime was even created—

much less in 2025, after the patent has expired.

### B. The district court is a better forum to develop and consider the evidence necessary to evaluate the validity challenges presented by the Petition

Murata's two petitions raise a total of five obviousness grounds based on

seven references. 383 IPR Pet. 18; 394 IPR Pet. 20. By filing these parallel

challenges to the same patent, Murata has, of its own accord, multiplied the

ordinary and workload of the PTAB. Even more, every obviousness inquiry

necessarily requires the fact finder to consider objective indicia (or secondary

considerations) of nonobviousness. *Volvo Penta of the Americas, LLC v. Brunswick

Corp.*, 81 F.4th 1202, 1215 (Fed. Cir. 2023) (vacating the PTAB's determination of

unpatentability and remanding because "the Board failed to properly consider the

evidence of objective indicia of nonobviousness"); *see also Ultratec, Inc. v.

CaptionCall, LLC*, 872 F.3d 1267, 1275 (Fed. Cir. 2017) (vacating the PTAB's

determination of unpatentability and remanding because "[t]he Board abused its discretion when it refused to admit and consider Mr. Occhiogrosso's trial testimony"). Those secondary considerations require development and presentation of detailed factual evidence (and potentially determination of credibility issues) that are better addressed in district court and certainly are not the best use of PTAB resources.

And here, secondary considerations are surely implicated. Murata had access to confidential information shared by JMD, including discussions about licensing the '914 patent and JMD's plans and proposals to collaborate with Murata to commercialize the patent. Murata may possess evidence of copying JMD's sample products, failure by Murata to develop the technology on its own (given its expressed interest in the patents), and evidence of commercial success once it began incorporating the inventions of the '914 patent into its product offerings.

Numerous factors will complicate and likely lengthen the time to obtain and process the relevant discovery:

- Given the age of the relationship between Murata and JMD, many of these documents may be difficult to locate or access. Indeed, some of the relevant evidence may date back to roughly twenty years ago.

- Murata is a Japanese company, so its documents may be in Japanese and require translation for use in a U.S. proceeding. Japanese law also imposes

IPR2025-00383

stringent limits on oral discovery, including the availability and conduct of

depositions in Japan.[10]

- Third-party discovery (via subpoena) may be necessary to access certain information about market share and use of the invention. But obtaining a subpoena here is governed by 35 U.S.C. § 24, which requires "application" for subpoenas to the district court—a process that is not often used and may be unfamiliar to the courts themselves. *See Waterdrop Microdrink GmbH v. Qingdao Ecopure Filter Co., Ltd.*, No. 2:23-MC-00123-JLS-PD, 2024 WL 277461, at *4 (C.D. Cal. Jan. 18, 2024); *see also* 37 C.F.R. § 42.52 (requirements for compelling testimony and production both inside and outside the U.S.).

- GTRC may be required to prove a nexus between the commercial success evidence it obtains from Murata and the '914 patent claims. To do so will require (1) expert testimony mapping the claims onto the relevant products and (2) highly technical and likely sensitive (to Murata) documentation about those products. Protective orders with a "highly confidential—attorney's eyes only" (AEO) tier of

---

[10] *See generally Depositions in Japan*, U.S. EMBASSY & CONSULATES IN JAPAN, https://jp.usembassy.gov/services/depositions-in-japan (last visited June 13, 2025).

IPR2025-00383

protection are somewhat routine in district courts,[11] while the PTAB's default

protective order lacks that tier entirely. *See* Trial Practice Guide, Appendix B ¶ (j)

- The PTAB's Trial Practice Guide prescribes a Model Order Regarding E-
Discovery, but this Order is not well suited to the type and scope of discovery that

will need to be obtained from Murata. For example, the Model Order prohibits

inclusion of metadata in documents and constrains email production requests (if

even authorized by the Board). *See* Trial Practice Guide § I.F.7, Appendix C.

- While these default orders may be modified, seeking authorization to file

motions and obtaining the Board's approval to enter them adds time and hurdles

that would not be present in the district court.

There is also the burden and hurdle of permitting this discovery in the first

place. GTRC is not "entitled" to take this discovery in an IPR unless Murata

"agree[s]." 37 C.F.R. § 42.51(b)(2). Assuming Murata does not agree,[12] GTRC will

---

[11] The Northern District of Georgia (where the parallel action is pending) has

Patent Local Rules that provide for *default* AEO protection to facilitate exchange

of information, even before the parties negotiate a protective order themselves.

Patent L.R. 2.1, NDGa.

[12] And it seems implausible that it would. Murta already declined consent to any

discovery in the district court action. Ex-2008, 2.

have to seek authorization to file a motion for additional discovery and meet the

PTAB's strict *Garmin* standard to pursue it. *See Garmin Int'l, Inc. v. Cuozzo Speed*

*Techs. LLC*, IPR2012-00001, Paper 26 (P.T.A.B. Mar. 5, 2013) (precedential).

Doing so will be difficult.

Because Murata shut down the district court case before any discovery could

be obtained (and it has not agreed to proceed), GTRC may not be able to show

more than a "mere possibility of finding something useful, and mere allegation

something useful will be found" for each category of information. *Garmin* at 6–7.

For example, while GTRC believes there will be evidence of copying, if allowed to

seek it, GTRC may not be able to identify each piece of that evidence with enough

specificity to satisfy the standard. The motion practice alone on this question will

consume additional Board resources. Further, in view of the factors identified

above, this case may require extending the 1-year period to issue a final written

decision to accommodate the scope of discovery under 35 U.S.C. § 326(a)(11) and

37 C.F.R. § 42.100(c).

Therefore, without *extensive* discovery of a foreign entity (among others),

GTRC will be hard-pressed to develop and explore these facts—which *must* be

considered as part of the core factual inquires for obviousness under *Graham v.*

*John Deere Co.*, 383 U.S. 1 (1966). But discovery before the PTAB in IPRs is

extremely limited, by design. See 37 C.F.R. § 42.51(b). On the other hand, the

IPR2025-00383

district court's rules are designed to accommodate the broad discovery required for complex litigation like this one, and district court judges are accustomed to developing schedules to address the discovery needs of the case and any conflicts that may arise. Accordingly, the robust discovery processes afforded in the parallel district court, compared to the burdens that would be imposed on the PTAB by these two IPR proceedings, weighs in favor of discretionary denial.

Last, given that IPRs can only address a limited set of validity challenges, the district court can resolve more disputed issues than the limited IPR proceedings. Murata has already filed a motion to dismiss in the district court case asserting that the patent is ineligible under § 101. Ex-1041, 1. Under the recent *Hulu* Director Review decision, it would be "unnecessary to institute another proceeding" to review the claims if the district court were to grant the motion, so that "the efficiency and integrity of the patent system is best served by denying institution." *Hulu, LLC v. Piranha Media Distribution, LLC*, IPR2024-01252 & IPR2024-01253, Paper 27, 2–3 (Apr. 17, 2025) (informative). Here, the district court has not granted the motion, and GTRC does not believe it should. But Murata is simultaneously challenging the validity of the patent in these forums, so inefficiency risks are still present. Thus, Murata's pending motion to dismiss still weighs in favor of discretionary denial, even if not as strongly as in *Hulu*.

IPR2025-00383

### C.   The *Fintiv* Factors favor discretionary denial

#### 1.   Factor 1: Neutral because it is unknown whether the district court will grant Petitioner's motion to stay

Factor 1 concerns "whether a stay exists or is likely to be granted if a proceeding is instituted." *Fintiv* at 6. Petitioner Murata and its U.S. subsidiary filed a motion to stay, but the district court has not acted on that motion yet. *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 15, 12 (P.T.A.B. May 13, 2020) (informative), cautions against speculating whether the district court will grant a stay. Thus, this factor is neutral.

#### 2.   Factors 2–4 do not favor discretionary denial, but only because of Murata's unilateral actions

In the district court, Murata filed a motion to dismiss without answering the complaint. Ex-1041, 1. As noted above, Northern District of Georgia local rules provide that the discovery period "does not open … unless the parties mutually consent" to proceed—which Murata declined to do. See Ex-2008, 2–3 (quoting *Jenkins v. Prime Ins. Co.*, No. 1:20-CV-01263-JPB, 2020 WL 6106626, at *1 (N.D. Ga. Apr. 21, 2020)). Thus, as Murata noted in its petitions, *see* 383 IPR Pet. 90–91; 384 IPR Pet. 94, there is no scheduling order entered and fact discovery has not even begun. And without those, there is no trial date (Factor 2), little investment in

IPR2025-00383

the parallel proceeding (Factor 3), and the extent of overlap is mostly speculative at this point (Factor 4).[13].

GTRC thus concedes that these factors do not weigh in favor of discretionary denial. However, to whatever extent they weigh in Murata's favor, they should be given little weight because it was Murata's unilateral action of filing the motion to dismiss that prevented the case from moving forward. Additionally, Murata delayed the initiation of the litigation by promising "good faith" settlement negotiations while in fact it was preparing its IPR petition. *See supra* § II.D.

### 3.    Factor 5: Identical parties in the parallel proceedings favor discretionary denial

Petitioner Murata and the identified real party-in-interest MENA are both defendants in the parallel district court action. Ex-1035, p.1; 383 IPR Pet. 92; 384 IPR Pet. 96. This factor weighs in favor of discretionary denial, even if it is not

---

[13] For example, while Murata filed a *Sotera* stipulation, which generally mitigates some of concerns about duplicative efforts, Murata has *already* asserted a § 101 defense via its motion to dismiss. And Murata will *presumably* assert additional grounds of invalidity that cannot be raised in an IPR and are not affected by its stipulation. So the district court action may still proceed in parallel, addressing more expansive set of invalidity ground that have not been disclosed yet—again because Murata's motion stopped the district court case in its tracks.

IPR2025-00383

given great weight. *Adobe, Inc. v. Jonathan E. Jaffe*, IPR2024-01352, Paper 8, 12–13 (acknowledging "varying approaches on how to weigh" this factor).

**4.    Factor 6: Other relevant circumstances, including the settled expectations of the parties and the burdens this case will put on the Board, weigh in favor of discretionary denial**

In Factor 6, the Board considers any other "relevant circumstances in the case" as part of its "holistic analysis." *See Fintiv* at 14–16; 2025 *Fintiv* Guidance at 3. In Section III.A–B, GTRC has outlined several "relevant circumstances" surrounding these disputes that weigh strongly in favor of discretionary denial.

**5.    Balancing *Fintiv* Factors**

In sum, *Fintiv* Factor 1 is neutral, Factors 2–4 are neutral or weigh slightly in favor of not exercising discretion, Factor 5 weighs in favor of denial (even if only slightly), and the numerous circumstances considered under Factor 6 weigh strongly in favor of discretionary denial. Balancing the factors favors denial of institution. See *iRhythm*, Paper 10 at 2 (the settled expectations factor "outweighs" the other considerations that weighed against denial).

## IV.    CONCLUSION

For the reasons set forth above, and consistent with both *Fintiv* and the USPTO's updated guidance, the Board should exercise its discretion to deny institution under 35 U.S.C. § 314(a).

IPR2025-00383

Respectfully submitted,

/Warren Thomas/
Warren J. Thomas (Reg. No. 70,581)

IPR2025-00383

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to 37 C.F.R. §§ 42.6(e) and agreement of the parties, I certify that on June 16, 2025, a copy of this paper and all accompanying exhibits were served on counsel for the Patent Owner by email to:

david.obrien.ipr@haynesboone.com;
kelly.lyle.ipr@haynesboone.com;
greg.michelson.ipr@haynesboone.com;
hong.shi.ipr@haynesboone.com.

<u>/Meg Cogburn/</u>
Meg Cogburn, Senior Paralegal
Meunier Carlin & Curfman LLC
999 Peachtree St, NE
Suite 1300
Atlanta, GA 30309

IPR2025-00383

## <u>CERTIFICATION OF WORD COUNT</u>

Pursuant to 37 C.F.R. § 42.24(d) and the PTAB Workload Management Memo, Petitioner certifies that the foregoing Patent Owner's Discretionary Denial Brief contains 6,828 words (even *including* the exempted portions).

/Warren Thomas/
Warren J. Thomas (Reg. No. 70,581)