**LAW360**

Portfolio Media. Inc. | 230 Park Avenue, 7th Floor | New York, NY 10169 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@law360.com

# USPTO Ex Parte Reexamination Could Become More Popular

By **Stephen Ball** (August 7, 2025, 6:47 PM EDT)

Patent litigation can be expensive. This is one reason patent challengers have looked to administrative proceedings at the U.S. Patent and Trademark Office as an alternative to district court. There, they hope to invalidate a patent relatively cheaply and render district court proceedings moot.

Inter partes review has been the proceeding of choice, and over time the USPTO's Patent Trial and Appeal Board became known as the patent kill court. However, not only have the costs at this venue ballooned, but recent developments have significantly reduced the effectiveness of IPRs.

An overlooked alternative is the USPTO's ex parte reexamination. During the 2024 fiscal year, there were only 425 ex parte reexaminations, a fraction of the 1,250 IPRs filed during the same period,[1] but for the reasons explained below, this could change in the near future.



Stephen Ball

### IPRs Are Weakening

The largest driver in reducing the effectiveness of IPRs is the increased discretionary denials coming from the USPTO.

While IPR petitions used to be regularly granted, a policy push to reduce their numbers has established precedent to deny institution for a variety of reasons, such as whether another forum has ruled on validity, a "settled expectations" doctrine based on the age of the patent, whether prior art cited in the petition is substantially similar to art already considered by the USPTO, and increased deference to ongoing proceedings.

This is against other policy backdrops of headcount reductions at PTAB due to the U.S. Department of Government Efficiency, as well as the government's return-to-office mandate. While the institution rate for IPRs in fiscal year 2024 was 68%, that number has now dropped to 20%.[2]

### Benefits to Ex Parte Reexaminations Over IPRs

One obvious reason to consider an ex parte reexamination over an IPR is the dramatic cost difference. For example, the USPTO's large entity filing fee for an ex parte reexamination is $13,545, which is reduced by 50% if streamlined (40 pages or less) and by another 50% if a small entity, which results in a fee of only $2,710.

In contrast, the USPTO filing fees for an IPR are over $50,000 for both large and small entities. In addition, attorney fees to prepare an IPR petition are often over six figures and continue to accumulate with a year of subsequent litigation.

An ex parte reexamination, meanwhile, is a fairly straightforward request that can be an order of magnitude less expensive to prepare, and then proceeds ex parte and without further attorney fees.

There are also legal benefits to an ex parte reexamination, including that it can be filed anonymously, whereas in an IPR the petitioner must certify the real party or parties of interest.

Estoppel also does not apply to an ex parte reexamination, while an IPR has broad statutory estoppel provisions that prevent raising arguments in subsequent proceedings.[3] This means that an EPX requestor has the option to reraise the same arguments in subsequent district court proceedings that were raised in an ex parte reexamination.

Still further, an ex parte reexamination uses the "broadest reasonable interpretation" standard for claim construction, while an IPR uses the narrower "person of ordinary skill in the art standard" used in district court. Because claims can be construed more broadly in an EPX, they have a better chance of being invalidated by prior art.

**Procedural Aspects of an Ex Parte Reexamination**

Any person, including the patent owner, may request an ex parte reexamination and there is no time limit for filing one. For reexamination to be ordered, the request must present a substantial new question of patentability supported by prior art. This is shown with detailed claim charts and optionally can include an expert declaration.[4]

Within three months, the USPTO director determines whether a substantial new question is raised, and if so, the patent owner is permitted an optional response. While the optional response may include claim amendments, it provides the requestor with an option to reply.[5]

The reexamination then proceeds ex parte and the USPTO issues a first office action within five months of ordering reexamination, and the patent owner is granted a two-month period to respond, which again may include claim amendments.[6]

Importantly, no claim amendments may enlarge the scope of protection in the patent.[7] The USPTO endeavors to issue the second office action as final, after which the patent owner's options are limited to filing an after-final reply with allowable subject matter or filing a notice of appeal to the PTAB.[8]

This streamlined process is designed to resolve questions of patentability efficiently with limited opportunities for further prosecution after the final office action.

**Effectiveness of Ex Parte Reexaminations in Patent Challenges**

Ex parte reexamination requests have historically had very favorable grant rates, and in the USPTO's first fiscal quarter of 2025, 109 ex parte reexamination requests were filed and 109 reexaminations were ordered.[9] They have also been effective at challenging claims, and in fiscal year 2024 only 20.2% of ex parte reexaminations requested by third parties resulted in all claims being confirmed.[10]

That means that in 80% of proceedings claims were canceled or narrowed. And it only takes on average 15 months for the USPTO to issue a notice of intent to issue reexamination certificate.[11]Not only are ex parte reexaminations effective, but they are expedient.

**Strategic Considerations for Ex Parte Reexamination Requests**

Ex parte reexamination exhibit a relatively low risk profile in terms of costs and legal liability, e.g., anonymity and no estoppel, so a third party can take risks in making a request. This includes filing a request using prior art previously listed on an information disclosure statement, explaining the significance an examiner may have missed.

The third-party requester should address both the substantial new question and why the USPTO should not deny the request. Third-party requesters should monitor proceedings as there may be an opportunity to file a reply to a patent owner response. Ultimately, even if claims survive, the vast majority are narrowed, which will reduce and damages liability for infringement.

The ex parte reexamination strategic framework is different for patent owners, but still can be a useful tool. For instance, patent owners can use an EPX as a faster and more straightforward alternative to reissuance in order to correct patent defects.

While third-party requesters do well to avail themselves of all available administrative procedures, patent owners will likely need to be more discerning about when and how to engage in the process. For instance, patent owners may consider forgoing a response to the ordering of reexamination as it gives the requestor an opportunity for a reply.

**Conclusion**

While IPRs have long been a preferred method for challenging patent validity, recent developments have made them less effective. Ex parte reexaminations offer a viable alternative, with significant cost savings, anonymity and procedural advantages.

Given their effectiveness, patent challengers should consider incorporating them into their strategies. By understanding the benefits and procedural aspects of ex parte reexaminations, both third-party requesters and patent owners can navigate the complexities of patent litigation more successfully and efficiently.

---

*Stephen Ball is a partner at Husch Blackwell LLP.*

*The opinions expressed are those of the author(s) and do not necessarily reflect the views of their employer, its clients, or Portfolio Media Inc., or any of its or their respective affiliates. This article is for general information purposes and is not intended to be and should not be taken as legal advice.*

[1] United States Patent and Trademark Office, "PTAB Trial Statistics FY24 End of Year Outcome Roundup IPR, PGR."
https://www.uspto.gov/sites/default/files/documents/ptab_aia_fy2024__roundup.pdf.

[2] Law360, "With Discretionary Denials, PTAB Accepting Fewer Petitions," July 16, 2025.
https://www.law360.com/articles/2360783/with-discretionary-denials-ptab-accepting-fewer-petitions.

[3] See 35 U.S.C. 315(e).

[4] See MPEP § 2214.

[5] See 35 U.S.C. §§ 303(a), 304.

[6] See MPEP § 2254.

[7] See 35 U.S.C. § 305.

[8] See MPEP §§ 2271-2273.

[9] United States Patent and Trademark Office.
https://www.uspto.gov/sites/default/files/documents/reexamination-op-stats.pdf.

[10] United States Patent and Trademark Office.
https://www.uspto.gov/sites/default/files/documents/ex_parte_historical_stats_.pdf.

[11] United States Patent and Trademark Office.
https://www.uspto.gov/sites/default/files/documents/reexamination-op-stats.pdf.

All Content © 2003-2025, Portfolio Media, Inc.