# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| GEORGIA TECH RESEARCH CORPORATION,<br><br>     Plaintiff,<br><br>v.<br><br>MURATA ELECTRONICS NORTH AMERICA, INC., and<br><br>MURATA MANUFACTURING CO., LTD.,<br><br>     Defendants. | Civil Action No. 1:24-cv-05268-JPB |

## GEORGIA TECH RESEARCH CORPORATION'S RESPONSE IN OPPOSITION TO RENEWED MOTION TO STAY [DOC. 26]

# **<u>TABLE OF CONTENTS</u>**

I.    INTRODUCTION ..........................................................................................1

II.   LEGAL STANDARD ...................................................................................2

III.  ARGUMENT ................................................................................................4

   A. Meaningful simplification is unlikely.............................................................4

   B. The likelihood of simplification here is significantly lower than in Murata's
      original stay request.......................................................................................7

   C. The likelihood of protracted delay here is significantly higher than in
      Murata's original stay request.....................................................................11

   D. A stay is likely to irreparably harm GTRC through the loss of critical witness
      testimony......................................................................................................15

   E. The stage of this case does not justify a stay. ..............................................17

IV.   CONCLUSION............................................................................................18

## I.    INTRODUCTION

Nothing is certain in this world except for death, taxes, and—if you believe Murata's renewed motion to stay—the benefits *ex parte* reexamination ("EPR") of the '914 Patent will bring to this litigation. [Doc. 26 at 11] ("Once the request is granted, there is **certainty** that this litigation will benefit from its final outcome.").

But Murata's "certainty" is nothing more than speculation. The reality is that a stay would offer only a small chance of minor simplification while inviting the near certainty of irreparable harm to GTRC through years of delay, duplicative litigation without the benefit of estoppel, and the loss of critical witness testimony.

PTO statistics show that EPRs rarely cancel all claims, leaving courts to resolve essentially the same disputes. And even when some claims are canceled, the reexamination process can create new complexities through added prosecution history and claim construction disputes. Any promise of efficiency is illusory because litigating two or three claims requires nearly the same discovery, motion practice, and trial preparation as litigating the entire patent. And far from being quick, EPRs often drag on for years, sometimes five or more, with little to show for it at the end.

EPRs are also less likely to simplify litigation than the *inter partes* review ("IPR") that Murata has "pivoted" away from. Unlike the IPRs that were the subject of Murata's prior motion to stay, EPRs impose no estoppel, lack statutory

deadlines, and may not even address every claim. These differences make substantial delay more likely and simplification less likely. Moreover, Murata's selective filing strategy—holding back references it asserted in the IPRs from its new EPR—suggests Murata plans to file multiple serial reexaminations to prolong this case even further or, at minimum, keep them in reserve to assert anew when the case returns to this Court. Meanwhile, witnesses central to issues such as willfulness are aging, raising the very real danger that memories will fade, evidence will be lost, and witnesses will be unavailable by the time this case reaches trial.

The Court is not required to accept Murata's gamble. A stay offers, at best, a slim chance of minor simplification while creating near certain prejudice to GTRC. Murata's renewed motion should be denied.

## II.    LEGAL STANDARD

District courts have the inherent power to manage their dockets. *See MiMedx Grp., Inc. v. Liventa Bioscience, Inc.*, No. 1:14-cv-1178-MHC, 2015 WL 13907479, at *2, 6 (N.D. Ga. Apr. 6, 2015). As such, courts are not required to stay litigation merely because a reexamination request has been filed with the PTO. *See Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001) (affirming denial of motion to stay proceedings in light of ongoing reexamination); *see also NTP, Inc. v. Research in Motion, Inc.*, 397 F. Supp. 2d 785, 787 (E.D. Va.

2005) ("A court is under no obligation to delay its own proceedings by yielding to ongoing PTO patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze.").

In deciding whether to issue a stay, the Court must examine "both the scope of the stay (including its potential duration) and the reasons cited." *Ortega Trujillo v. Conover & Co. Commc'ns, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2012). As part of this holistic review, courts typically consider: (1) whether a stay will simplify the issues in question and trial of the case; (2) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; and (3) whether discovery is complete and whether a trial date has been set. *See, e.g.*, *Interface, Inc. v. Tandus Flooring, Inc.*, No. 4:13-CV-46-WSD, 2013 WL 5945177, at *4 (N.D. Ga. Nov. 5, 2013).

In addition, the movant "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Fleetwood Group, Inc., v. Albert Hall Meetings Ltd.*, No. 6:06-cv-859, 2007 WL 9723102, at *4 (M.D. Fla. 2007) (internal quotation marks omitted). And a stay cannot be granted if it is found to be "indefinite or immoderate [of duration]." *CTI-Container Leasing Corp., v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982) (citing *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982)).

## III.    ARGUMENT

A stay offers at best a remote chance of meaningful simplification while creating the overwhelming likelihood of irreparable harm to GTRC through years of delay, duplicative litigation without estoppel, and the loss of critical witness testimony. Murata's renewed motion should therefore be denied.

### A. Meaningful simplification is unlikely.

Even *assuming* the PTO institutes an EPR of the '914 Patent, the likelihood of meaningful simplification in this case is low. PTO statistics show that over 80% of patents survive third-party EPR requests to some extent.[1] Exhibit A, pg. 2 (10(b)(b) *Ex parte* reexamination filing data stating that only 16.9% of EPRs initiated by a 3rd party result in all claims being canceled). In practice, litigating two or three claims requires nearly the same discovery, motion practice, and trial preparation as litigating eight. So unless the EPR cancels every claim of the '914 Patent, a statistically improbable outcome (16.9% according to the statistics both

---

[1] Murata argues that the likelihood of cancellation is higher here because the '914 Patent cannot be amended. See [Doc. 26 at 2, 11–12]. But the PTO does not disaggregate amendable vs. non-amendable patents in their statistics, so the 80% survival rate already accounts for patents that cannot be amended.

In any case, GTRC couldn't have amended this patent in an IPR, either. Murata argues this contrived "difference" between the two stay motions "weigh[s] more in favor of granting the stay" this time. [Doc. 26 at 2]. But its newfound attention to the inability to amend underscores the actual difference between the motions, which GTRC discusses below. *Compare, generally id.* (pointing out inability to amend at least four times)*, with* [Docs. 14, 24] (never mentioning inability to amend in prior briefing).

parties cite), efficiency gains are unlikely. *See Ariba, Inc. v. Emptoris, Inc.*, No. 9:07-CV-90, 2007 WL 3132606, at *2 (E.D. Tex. Oct. 23, 2007) (denying motion to stay and noting that "if only one claim remained [after reexamination], invalidity would continue to be an issue, and so a stay would not preserve many resources"); *Alps South, LLC. v. Ohio Willow Wood Co.*, No. 8:09-cv-00386, 2010 WL 2465176, at *2 (M.D. Fla. June 16, 2010) (denying motion to stay and noting that "[t]o truly simplify the issues … the outcome of the reexamination must finally resolve all issues in the litigation").

Likewise, Murata's promise that further prosecution will clarify the scope of the claims is too vague to be meaningful. *See Roy-G-Biv Corp. v. Fanuc Ltd.*, No. 2:07-cv-418, 2009 WL 1080854, at *2 (E.D. Tex. Apr. 14, 2009) ("To convince this Court that a stay will actually simplify a case, the requesting party must do more than merely proffer oft-cited reexamination statistics and generic judicial efficiency arguments."). In fact, further prosecution may actually *complicate* litigation. Judge Folsom of the Eastern District of Texas—one of the nation's busiest patent dockets even when he was on the bench—has observed "it is this Court's experience that the reexamination process may actually complicate a case by creating additional prosecution history estoppel and disavowal arguments that must be addressed during claim construction." *Roy-G-Biv Corp.*, 2009 WL 1080854, at *2.

5

Indeed, the very cases Murata cites to tout the benefits of reexamination (see [Doc. 26 at 12]) tell the opposite story—one of wasted time, duplicated effort, and minimal simplification. In *IP Co., LLC v. Tropos Networks, Inc.*, reexamination stalled litigation for more than *four years* and resulted in virtually no simplification, as 31 of 35 claims were found patentable. No. 1:06-CV-0585-CC, slip op. at 1–2 & n.1 (N.D. Ga. Mar. 5, 2014), ECF No. 188 (attached as Exhibit F). The parties then resumed fighting over prior art invalidity in district court, only to end up in several IPRs two years later. *Id*. at 2–3. Similarly, in *Adair v. Boat Dock Innovations, LLC*, No. 1:12-cv-01930-SCJ (N.D. Ga. Oct. 9, 2014), ECF No. 45, reexamination dragged on for over 18 months and ended up upholding most claims (eight out of thirteen). Slip op. at 1–2 (attached as Exhibit G) (noting reexamination requested September 14, 2012, and reexamination certificate issued October 3, 2014).

Murata also draws the wrong lesson from its failed IPRs. Murata claims that "GTRC's avoidance of responding substantively to Murata's IPR petitions" demonstrates their merits. [Doc. 26 at 15]. However, GTRC was never obligated to respond to Murata's IPRs. *See* 35 U.S.C. § 313 (noting the "right" but not the obligation to file a preliminary response). Instead, the burden of institution was always on Murata. *Id*. § 314(a); *see also* 37 C.F.R. § 42.108(c) (providing that "[IPR] *shall not be instituted unless* the Board decides that the information

presented in the petition" meets the standard, and that the initial decision on the petition "will take into account a patent owner preliminary response *where such a response is filed*" (emphasis added)). Thus, far from suggesting any merit to Murata's positions, GTRC's decision to forego a preliminary response merely reflects its choice to hold Murata to its statutory burden.

### B. The likelihood of simplification here is significantly lower than in Murata's original stay request.

There are two significant differences between an EPR—which is the subject of Murata's current stay request—and IPRs—which were the basis of Murata's previous stay request—that make simplification even less likely now than before.

First and most importantly, unlike IPRs, EPRs impose *no estoppel*, leaving Murata free to relitigate the *same issues* in this Court that the PTO would review if it grants the EPR. *Cf. eCOMSYSTEMS, Inc. v. Shared Marketing Services, Inc.*, No. 8:10-cv-1531, 2011 WL 280942, at *2 (M.D. Fla. Jan. 26, 2011) (noting EPRs allow the requestor to relitigate the same issues in district court). Here, unless the PTO grants the reexamination and cancels *every claim*, Murata will almost certainly relitigate invalidity before this Court. And while Murata's original motion to stay assured the Court it would be estopped from re-raising the invalidity arguments in its IPRs, Murata's renewed motion unsurprisingly ignores the lack of estoppel entirely. *Compare* [Doc. 14 at 3], *with* [Doc. 26].

7

The absence of estoppel makes simplification much less likely and, therefore, Courts in this circuit routinely view the absence of estoppel as a significant factor weighing against a stay. *See, e.g.*, *eCOMSYSTEMS*, 2011 WL 280942, at *3 ("[T]he Court does not find that judicial economy will be served by a stay because the pending *ex parte* reexaminations of the patents-in-suit would still leave [Defendants] free to relitigate the exact same issues before this Court."). In a similar vein, in *Medline Industries, LP., v. C.R. Bard, Inc.*, this Court denied a motion to stay pending resolution of a parallel district court proceeding because the movant failed to show that the parallel proceeding would have preclusive effect, and thus it wasn't clear that a stay would streamline litigation. No. 1:20-CV-03981, 2023 WL 2368726, at *2 (N.D. Ga. 2023) ("[T]he Court finds that a stay is … inappropriate … [because] Plaintiff has not met its burden to show that issue preclusion would apply here.").

Likewise, many patent-heavy districts also emphasize the value of estoppel when considering whether to stay litigation. *See, e.g.*, *Lian Li Indus. Co. v. Phanteks Eur.*, No. 2:23-CV-07471-HDV-MAR, 2024 WL 4800683, at *1 (C.D. Cal. Oct. 4, 2024) (denying request to stay pending EPR due to extended timeframe and the court's "concern[] that—unlike an IPR review—the EPR will not carry the same estoppel effect and therefore does not have the same potential to simplify the issues"); *Longhorn HD LLC. v. NetScout Sys., Inc.*, No. 2:20-CV-

00349-JRG, 2022 WL 71652, at *3 n.5 (E.D. Tex. Jan. 6, 2022) (Gilstrap, J.) (finding it "significant" that defendant "will not be estopped from raising the arguments advanced in the … EPR") (citing *KIPB LLC v. Samsung Elecs. Co.*, No. 2:19-CV-00056-JRG-RSP, 2019 WL 6173365, at *2 (E.D. Tex. Nov. 20, 2019) (Payne, J.) (finding argument about "lack of any estoppel effect for *ex parte* reexamination" persuasive")); *Facebook, Inc. v. BlackBerry Ltd.*, No. 4:18-CV-05434-JSW, 2020 WL 13890661, at *5 (N.D. Cal. June 15, 2020) (finding simplification factor neutral, despite potential for reducing number of claims, in part because "the PTO's interpretations are not binding, and no estoppel prevents [the defendant] from advancing the same invalidity arguments before the jury"); *Monterey Rsch., LLC v. Nanya Tech. Corp.*, No. 1:19-CV-02090, slip op. at 2 (D. Del. June 25, 2021), ECF No. 139 (finding stay pending EPR "not likely to simplify the issues for trial to any significant extent" because "EPRs do not carry the estoppel effect of IPR proceedings") (attached as Exhibit H); *Cronos Techs., LLC v. Expedia, Inc.*, No. 1:13-cv-01538-LPS, 2016 WL 1089752, at *2 (D. Del. Mar. 21, 2016) (Stark, J.) ("Moreover, Defendants will not be estopped from raising the same invalidity defenses raised during reexamination …. Thus, Defendants could potentially be permitted 'two bites at the apple' using the same invalidity arguments in both fora."); *Eon Corp. IP Holdings, LLC., v. Skytel Corp.*, No. 6:08-CV-385, 2009 WL 8590963, at *5 (E.D. Tex. 2009) ("[R]eexamination is

unlikely to simplify the issues in this case … [because] Defendants may still challenge the validity of the patents at issue because *ex parte* reexamination proceedings have no estoppel effect.").

Without estoppel, an EPR leaves Murata free to relitigate invalidity in this Court, ensuring duplication rather than simplification, and making a stay far more likely to waste time and resources. Indeed, Murata's choice to only request reexamination on *one* of the two challenges it previously presented to the PTAB signals it plans to hold those additional grounds in reserve to assert either in another EPR or in this Court if it is not successful in its first bite at the apple.

Second, unlike IPRs, EPRs do not guarantee that every claim will be reexamined. Murata emphasizes that EPR requests are rarely denied outright. *See* [Doc. 26 at 12, 16]. But that overstates the likelihood of simplification because even when an EPR request is granted, the PTO will only reexamine those claims for which it finds a "substantial new question of patentability."[2] *See* Manual of Patent Examination Procedure (MPEP) §§ 2247–47.01 (giving the example of a decision to reexamine a subset of the requested claims).[3] At the pre-institution stage, the prospect of simplification is always "a matter of conjecture." *3Shape A/S*

_____

[2] Conversely, if a petitioner in an IPR meets the burden for institution as to *any* challenged claim, then the PTAB will ultimately rule on *all* challenged claims. *See* 35 U.S.C. § 318(a); *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 362–63 (2018).

[3] Available at https://mpep.uspto.gov/RDMS/MPEP/current.

*v. Carestream Dental, LLC*, No. 1:22-cv-01829-WMR, 2023 WL 2068050, at *1–2

(N.D. Ga. Jan. 5, 2023) (denying the motion to stay pre-institution). And that

uncertainty is even greater in the context of an EPR, where the PTO may

ultimately limit reexamination to only a subset of the claims. Therefore, compared

to an IPR, an EPR provides far less assurance that reexamination will even

address—let alone resolve—every claim at issue in this litigation.

### C. The likelihood of protracted delay here is significantly higher than in Murata's original stay request.

Murata's renewed stay request also poses a greater risk of protracted delay

for two reasons.

*First*, EPRs lack the one-year statutory deadline that govern IPRs. *Compare*

35 U.S.C. § 316(a)(11), *with* 35 U.S.C. § 305. And while EPRs are conducted with

"special dispatch," (35 U.S.C. § 305), the lack of a hard deadline means that EPRs

can lead to protracted delays. For example, in *Middleton, Inc., v. Minn. Mining and*

*Mfg. Co.*, the district court stayed litigation *for over seven years* pending

reexamination and appeal. *Compare* No. 4:03-cv-40493, slip op. at 26 (S.D. Iowa

Aug. 24, 2004), ECF No. 178 (staying the case) (attached as Exhibit I), *with id*.

(Oct. 20, 2011), ECF No. 210 (lifting the stay) (attached as Exhibit J). And despite

the court's initial optimism, Exhibit I ("The Court finds a high likelihood that

results of the PTO's reexamination would have a dramatic effect on the issues

before the Court."), reexamination left the patent entirely unchanged. *See* Exhibit

K, pg. 2 (Ex parte reexamination certificate of U.S. Patent No. 4,944,514). Thus, compared with an IPR, EPRs pose a much higher risk of protracted delay.

This risk is not merely hypothetical—EPRs regularly take longer than IPRs in practice. Unlike IPRs, which must be completed within one year, the average pendency of EPRs is 25.1 months. Exhibit A, pg. 2 (*Ex parte* reexamination filing data – September 30, 2024). And as noted, many take substantially longer than that. Further, the outcome of reexamination does not take effect until a "reexamination certificate" issues, which can only happen "when the time for appeal has expired or any appeal proceeding has terminated." 35 U.S.C. § 307. The average pendency of EPR appeals to the Patent Trial and Appeal Board (PTAB) completed between May and July of this year was 5 months. Exhibit B at 7. And the average pendency of Federal Circuit appeals from the PTAB is approximately 16 months. Exhibit C. Therefore, if reexamination involves an appeal, litigation is likely to be delayed by more than three years, and possibly much longer.[4]

Courts have repeatedly recognized that the absence of a reliable timetable renders a stay indefinite and therefore improper. *See, e.g., CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982) (determining a stay

---

[4] And even the milestone of the examiner issuing a "Notice of Intent to Issue *Ex Parte* Reexamination Certificate" ("NIRC"), which effectively concludes the reexamination (see MPEP § 2287), takes longer on average than the limit for IPRs. Exhibit E (noting the average time to a NIRC is 16.31 months).

to be indefinite when accurate prediction of the length of stay would be difficult); *Lexington Lasercomb I.P.A.G. v. GMR Prods., Inc.*, 442 F. Supp. 2d 1277, 1278 (S.D. Fla. 2006) ("Here, a stay of this action could result in an [sic] delay of months, if not years. Accordingly, this Court declines to stay, and thus prolong for an indefinite period of time, the instant litigation."). In fact, a similar situation arose in *Fusilamp, LLC, v. Littlefuse, Inc.*, where the court declined to stay litigation pending completion of an EPR. There, the Court stressed the unpredictability of reexamination timelines, observing that "the Court cannot be assured that the reexamination process will proceed quickly … the reexamination process takes on average 25.4 months to complete, and another 24 months on average for appeals." No. 10-20528-civ, 2010 WL 2277545, at *5 (S.D. Fla. June 7, 2010). On that basis, the Court concluded that "the length of the stay, if issued in this case, appears to be indefinite, and as such, is immoderate and unlawful." *Id*. The same reasoning applies with even greater force here, where the length of reexamination remains uncertain and PTO statistics confirm that EPRs and their appeals still take multiple years to resolve.

*Second*, the risk of protracted reexamination is even greater here than in a typical EPR because, rather than including all its §§ 102 and 103 invalidity challenges in a single EPR, Murata withheld several references originally raised in its IPR petitions. This behavior suggests Murata plans to file multiple, serial EPRs,

or at minimum there is nothing preventing Murata from doing so. Indeed, this kind of piecemeal approach to reexamination is a well-known defense tactic, and commentators have recognized its potential for abuse. *See* Exhibit L ("Preventing Harassment in Patent Reexamination: MPEP § 2240's Smoking Gun Requirement").[5]

This risk is also more than hypothetical. For example, U.S. Patent 6,083,213 was subjected to three separate EPR requests and one *inter partes* reexamination request over the course of nearly four years. *Voda v. Medtronic Inc.*, 835 F.Supp.2d 1140, 1144–46 (W.D. Okla. Dec. 14, 2011). And despite the extraordinary length and cost of that process, ultimately only a single claim was canceled. *Id.* at 1145–46 ("Thus, the claims at issue in this action have been subject to four reexamination requests before the PTO and ultimately confirmed each time.").

By withholding references in its initial EPR request and offering no commitment to estoppel, Murata has effectively guaranteed that this case will remain under the shadow of potential future reexaminations. Every time the PTO concludes one proceeding, Murata can initiate another based on "new" prior art that it deliberately chose not to present earlier. Or perhaps Murata withheld these

---

[5] *Also available at* https://www.patentspostgrant.com/2010/04/preventing-harassment-in-reexamination-is-mpep-%C2%A7-2240-toothless-absent-the-proverbial-smoking-gun/.

additional validity challenges because it intends to keep them in reserve to assert in this litigation. Either way, this gamesmanship undermines the central premise of Murata's motion—that reexamination will lead to prompt simplification of the issues for trial.

### D. A stay is likely to irreparably harm GTRC through the loss of critical witness testimony.

If the Court grants a stay, there is a substantial risk that GTRC will lose access to critical witness testimony. As discussed above, the average pendency of EPRs is 25.1 months.[6] Exhibit A at 7(a). Moreover, the average time to trial in this Court is 34.9 months. Exhibit D, pg. 93 (U.S. district courts—national judicial caseload profile). And as Murata's own exhibit acknowledges, EPRs are likely to become more popular, potentially increasing any delay further. *See* [Doc. 26-4] (titled "USPTO Ex Parte Reexamination Could Become More Popular"). Murata has already tried to delay this case from getting off the ground twice (at least)—by moving to dismiss and by its initial motion to stay. See [Doc. 21 at 1]. But now, if a stay is granted and the PTO institutes an EPR, it will likely be at least another *five years* before this case reaches trial.

By that time, key testimony will likely be lost. One of the central issues in this case is whether Murata's infringement was willful. This issue depends almost

---

[6] Measured from the time of filing to the time of issuance.

entirely on the testimony of Murata's employees, especially those involved in the

negotiations between Murata and JMD.[7] *See Alltech, Inc. v. Cenzone*, No. 3:06-

00153-RBB, 2007 WL 935516, at *2 (S.D. Cal. Mar. 21, 2007) (finding that the

risk that witness memories may fade while waiting for reexamination weighs in

favor of denying a motion to stay); *Anascape, Ltd. v. Microsoft Corp.*, 475 F. Supp.

2d 612, 617 (E.D. Tex. 2007) (noting that "crucial witnesses are more likely to be

located if discovery is allowed to proceed now, rather than later"). Worse still,

these witnesses may be deceased or difficult to locate. Simply put, the risk that

crucial testimony on product development and willfulness will be lost during what

is likely to be years of delay weighs strongly against a stay.

What is more, Murata cannot meet its burden to justify such prejudice. To be

successful in its renewed motion, Murata "must 'make out a clear case of hardship

or inequity in being required to go forward, if there is even a fair possibility that

the stay … will work damage to [GTRC].'" *Fleetwood Group, Inc., v. Albert Hall*

*Meetings Ltd.*, No. 6:06-cv-859, 2007 WL 9723102, at *4 (M.D. Fla. 2007) (citing

---

[7] Employees such as Mr. Tsuneo Murata, who personally visited JMD in Atlanta in 2006, and is now approximately 74. Exhibit M (noting Mr. Murata was born in 1951), *also available at* https://corporate.murata.com/en-us/more_murata/techmag/metamorphosis16/message; Complaint [Doc. 1] ¶ 63. Likewise, Mr. Hiroshi Iwatsubo, who visited JMD in 2007, is 63. Exhibit N at 2 (noting Mr. Iwatsubo was born on August 11, 1962); Iwatsubo Decl. (Exhibit O) ¶ 4; Complaint [Doc. 1] ¶ 66. If this case is stayed, Mr. Murata will likely be nearly 80 by the time of trial, and Mr. Iwatsubo will likely be nearly 70.

*Unidisco, Inc. v. Schattner*, 210 U.S.P.Q. 622, 629 (D. Md. 1981)). But here,
Murata has not—and cannot—make this showing. Denying a stay does not deprive
Murata of its ability to challenge the '914 Patent because Murata remains free to
pursue post-grant remedies before the PTO while arguing invalidity in this Court.
Nor does the possibility of parallel proceedings constitute hardship—after all, if an
EPR is instituted, GTRC will almost certainly be forced to litigate §§ 102 and 103
invalidity in both forums regardless of whether a stay is issued, while Murata will
play no role in the EPR at all. The only "hardship" Murata could experience by
having to continue litigation is being deprived of the benefit of testing out its
invalidity theories before having to make them in this Court. That is not hardship,
and it is certainly not a basis to impose years of delay that would irreparably harm
GTRC.

### E.  The stage of this case does not justify a stay.

Although this case is in the early stages, the overall weight of the factors is
against granting a stay. *See DiCon Fiberoptics, Inc. v. Preciseley Microtechnology
Corp.*, No. 15-cv-01362-BLF, 2015 WL 12859346, at *3 (N.D. Cal. Oct. 13, 2015)
(finding that an early stage of litigation, balanced against the speculative nature of
the simplification factor and a neutral prejudice factor, did not warrant granting a
stay). As the other two factors weigh against a stay, the considerations of no
discovery and no trial date lend little support to Murata's request. That is

particularly true here where Murata's unilateral actions, discussed in GTRC's original opposition to a stay, [Doc. 21 at 1-6], have prevented this case from advancing beyond the preliminary stages.

## IV.    CONCLUSION

After careful balancing of the above factors, it is not appropriate to stay the present case, and certainly not before the PTO institutes reexamination. Defendants have failed to show a stay of the case is warranted, so GTRC respectfully requests that the Court deny Defendants' Motion in its entirety.

*/Warren J. Thomas/*

John W. Harbin (Ga. Bar No. 324130)
Gregory J. Carlin (Ga. Bar No. 455865)
Warren J. Thomas (Ga. Bar No. 164714)
**Meunier Carlin & Curfman LLC**
999 Peachtree Street NE
Suite 1300
Atlanta, GA 30309
Tel: 404-645-7700
jharbin@mcciplaw.com
gcarlin@mcciplaw.com
wthomas@mcciplaw.com

*Attorneys for Plaintiff Georgia Tech Research Corporation*

## <u>LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE</u>

Pursuant to LR 7.1(D), I certify that this brief has been prepared with one of

the font and point selections approved by the Court in LR 5.1.

<u>*/s/ Warren J. Thomas*</u>
Warren J. Thomas