## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

GEORGIA TECH RESEARCH
CORPORATION,

      *Plaintiff,*

     v.

MURATA ELECTRONICS
NORTHER AMERICA, INC. and
MURATA MANUFACTURING CO.,
LTD.,

      *Defendants.*

Civil Action No. 1:24-cv-05268-JPB

## REPLY BRIEF IN SUPPORT OF RENEWED MOTION TO STAY FOR DEFENDANT MURATA ELECTRONICS NORTH AMERICA, INC., AND DEFENDANT MURATA MANUFACTURING CO., LTD.

## I.    INTRODUCTION

GTRC's opposition to Murata's Motion to Stay distorts the facts and the law. For the facts, as EPR statistics are not on its side, GTRC omits critical statistics that show an EPR offers a high likelihood of simplification. Procedurally, as the procedural facts of this litigation are not on its side, GTRC paints a bleak imaginary future, speculating that witnesses will be unavailable, or that Murata is hiding other prior art that would invalidate the asserted patent that they did not raise in the EPR. And regarding the law, since the traditional three-factor test for assessing stay motions is not on its side, GTRC makes up new law, concocting two new factors, and conjuring an unprecedented five-factor test out of thin air.

The Court should decline to adopt GTRC's unsupported and unprecedented five-factor test and follow the traditional three-factor test, namely: (1) the likelihood of simplification that a stay pending the EPR would offer, (2) the current stage of this case, and (3) whether a stay will be unduly prejudicial. As demonstrated in Murata's opening brief, all three factors weigh in favor of a stay. The case is in its early stages (which GTRC concedes). If the EPR request is granted then the EPR will simplify this case, either by (1) cancelling all claims and mooting this litigation or (2) generating new prosecution history with GTRC's own remarks clarifying the claim scope—which will benefit all parties to this litigation and the Court. The four prejudice sub-factors—which GTRC does not analyze—all balance in favor of a

stay. Finally, courts in this District may consider a fourth factor—whether a stay will "reduce the burden of litigation"—which GTRC neither acknowledges nor addresses. This factor also weighs in favor of a stay.

All factors indicate that a stay here is appropriate. All applicable caselaw also indicates that a stay is appropriate. Accordingly, Murata respectfully requests that the Court grant Murata's motion and stay the case.

## II.    DISCUSSION

GTRC departs from this traditional three factor test. Instead, it organizes its argument under an unprecedented five-factor analysis:

1.  the likelihood of "[m]eaningful simplification" (*see* Dkt. 27 at III.A);

2.  "[t]he "likelihood of simplification [compared to other post-grant review procedures]" (*see* Dkt. 27 at III.B);

3.  "[t]he likelihood of protracted delay" (*see* Dkt. 27 at III.C);

4.  the likelihood of "irreparabl[e] harm" (*see* Dkt. 27 at III.D);

5.  the stage of the case (*see* Dkt. 27 at III.E).

This new analysis is not only unprecedented, it is problematic for multiple reasons.

First, it duplicates the simplification factor and prejudice factors, giving them undue weight. In effect, this duplication attempts to minimize the "stage of the case" factor—a factor that GTRC admits is not on its side.

Second, instead of analyzing "undue prejudice," GTRC creates two new factors: "the likelihood of protracted delay" and "likelihood of irreparable harm."

This is not the test. Instead, Courts in this District have a well-established sub-factor test for undue prejudice, which includes: "(1) the timing of the review request; (2) the timing of the request for stay; (3) the status of the review proceedings; and (4) the relationship of the parties." *Doubleday Acquisitions LLC v. Envirotainer AB*, No. 1:21-CV-03749-SCJ, 2022 WL 18778991, at *3 (N.D. Ga. June 3, 2022). GTRC completely ignores three of the four sub-factors, namely (1), (2), and (4). And GTRC's two made up factors, "protracted delay" and "likelihood of irreparable harm," both fall within sub-factor (3). In effect, GTRC—without even acknowledging the other three sub-factors—asks the Court to take this single sub-factor, make it control the prejudice analysis, and then give the prejudice factor double its weight in the analysis as a whole.

The Court should decline to adopt this self-serving, unprecedented test and apply the traditional, well-established three factor test, namely: (1) the stage of the case, (2) the likelihood of simplification, and (3) whether or not the non-movant will suffer ***undue*** prejudice by the stay. Understanding that all stays will have some prejudicial effect, the Court should balance the potential benefits of stay with the potential drawbacks. *Id*. There is no reason to depart from this well-established test.

### A.    The stage of the case weighs in favor of a stay

GTRC does not deny that this case is in its early stages. Nor could it. The EPR request and Motion to Stay were filed as early as possible, even before Murata has

answered. Since GTRC cannot deny that this factor weighs in favor of a stay, it attempts to diminish its weight by duplicating the other two factors in hopes of increasing their weight. The Court should deny this attempt to circumvent the well-established analysis. The Court should afford this factor the weight that it is due and find that it weighs in favor of a stay.

### B.    The likelihood of simplification weighs in favor of a stay

If the EPR is granted, then one of two things will occur: (1) the claims will be cancelled or (2) the claim scope will be clarified by additional prosecution history. Since the patent has expired, GTRC cannot amend the claims to overcome the prior art. GTRC fails to acknowledge this. Instead, it misrepresents EPR statistics to downplay the likelihood of cancellation of the claims and quotes non-binding caselaw from other districts to smear the value of prosecution history—caselaw that ignores the purpose of EPRs as a mechanism for alternative resolution of issues of validity. GTRC is wrong for two reasons.

### a)    There is a high likelihood of cancellation

GTRC is wrong that the likelihood of cancellation *in this case* is only 16.9%. There is roughly an 80% chance of cancellation of the claims in this case based on GTRC's own cited EPR statistics:

| | | |
|---|---|---|
| b. Certificates – 3rd PARTY REQUESTER | | 5794 |
|     a. All claims confirmed | 1172 | 20.2% |
|     b. All claims canceled | 980 | 16.9% |
|     c. Claims changed | 3642 | 62.9% |

Dkt. 27-1 at 2. 62.9% of claims that "survived" only did so *because they were amended*. Here, that is not an option since the patent has expired. If the claims in this case fall within the 62.9% of cases where the claims would be amended to overcome the prior art, they will be cancelled. Thus, in this case, the odds of cancellation are roughly 80%. However, even if amendment were possible in this case, Courts in this District have found the roughly 16.9% cancellation rate and roughly 62.9% amendment rate to be sufficient "likelihood of simplification" to warrant a stay. *Southwire Co. v. Cerro Wire, Inc.*, No. 3:08-CV-92-JTC, 2009 WL 10664896 (N.D. Ga. May 12, 2009) (Because the claims are *subject to change or cancellation*, judicial economy dictates staying this case pending reexamination).

GTRC misrepresents the facts of Murata's cited cases, arguing that there was "virtually no simplification"—the operating word apparently being "virtually." In *IP Co., LLC v. Tropos Networks, Inc.*, the EPR resulted in "the amendment of two claims, and the cancellation of four claims"—which in this case would be the cancellation of six claims. *See* Dkt. 27-6 (No. 1:06-CV-0585-CC, slip op. at 1–2 (N.D. Ga. Mar. 5, 2014)). By what standard is this "virtually no simplification?" Entire claims were removed from the case. Courts in this District find such to be meaningful simplification. *See Southwire Co.*, 2009 WL 10664896. Likewise, the claims in *Adair v. Boat Dock Innovations, LLC* were all allowed *because they were amended*—which would have resulted in cancellation of all claims if it occurred in

this case. *See* Dkt. 27-07; Ex. E (Reexamination Certificate No. US 7,464,792). Importantly, GTRC doesn't actually cite these cases for the simplification provided. Rather, GTRC emphasizes the length of the stays in these cases, which is a consideration under the prejudice factor, not the simplification factor—another instance of GTRC ignoring and misapplying the well-established three-factor test. While the stays in these cases were lengthy, the stays paid off, resulting in significant simplification of the cases.

### b)    Simplification will occur even if the claims are not cancelled

GTRC is wrong that simplification can only occur by cancellation of the claims. Even if the claims in this case happen to survive the EPR unamended (only a 20.2% chance), then this case will be simplified because GTRC will make clarifying remarks in defense of its patent.

Intuitively, remarks from GTRC concerning the scope of the claims would benefit the Court and the parties in deciding issues of infringement, invalidity, and claim construction. Yet, GTRC argues that additional clarification is actually to this Court's detriment, citing only a single sixteen-year-old case from another district. Dkt. 27 at 5 (citing *Roy-G-Biv Corp. v. Fanuc Ltd*., No. 2:07-cv-418, 2009 WL 1080854, at *2 (E.D. Tex. Apr. 14, 2009). Specifically, GTRC is concerned that an EPR will "creat[e] additional prosecution history estoppel and disavowal arguments that must be addressed during claim construction." *Id.* Prosecution history estoppel

and disavowal issues would only come up *if* GTRC takes inconsistent claim scope positions in this Court and the Patent Office. Moreover, *if* GTRC takes these inconsistent positions, then these issues of prosecution history estoppel and disavowal issues would come up regardless of whether or not the case is stayed. The only difference between staying and not staying the case is *when* the Court hears these issues. If the case is stayed, then these issues will arise before claim construction and the Court might actually hear these issues "during claim construction." *See id.* If the case is not stayed, then these issues may not come to the surface until long into this case after ordinary claim construction is complete, causing expensive supplementary claim construction. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008).

GTRC also argues that no simplification will result unless the claims are cancelled because Murata will not be bound by estoppel if the EPRs fail.[1] As previously stated, there is an 80% chance that the claims are cancelled in this case. However, to the extent that any of the claims are allowed, the prosecution history

---

[1] There is a very good reason why estoppel does not apply to an EPR like it does to an IPR. An EPR is—as the name suggests—*ex parte*. Once Murata files its request, it cannot participate any further in the proceedings. If GTRC misrepresents the prior art after Murata has exited the proceedings, no interested party is present to challenge such misrepresentations. Thus, Murata's right to make the same prior art challenges must be preserved in the parallel litigation. But it is nonsense to argue that the lack of estoppel means there will be no simplification. EPRs were specifically designed to provide a parallel proceeding to potentially simplify cases. *See Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983).

will simplify this case. Specifically, GTRC's own remarks concerning the claim scope, especially if they are used to circumvent prior art, will help guide the Court and the parties on all issues in the case: invalidity, infringement, and claim construction. While these issues will not be *resolved*, they will be *simplified*. No Court has held that estoppel or a likelihood of *complete resolution* is necessary for a stay. If such were true, no case could ever be stayed pending an EPR. But Courts in this District have regularly stayed cases under similar circumstances, despite the lack of estoppel. *See Adair*, 2013 WL 1859200, at *3 ("Plaintiff also claims prejudice will result as Defendants, who are not bound by the results of the *ex parte* reexamination, will be afforded an opportunity to raise before the Court the same prior art as in the reexamination. While this presents a concern, it will not cause undue prejudice"); *see also Mueller Water Prods., Inc. v. Victaulic Co.*, No. 1:12-CV-3446-JEC, 2013 WL 5423439, at *3 (N.D. Ga. Sept. 26, 2013).

However, GTRC is wrong that no estoppel will apply from the EPR. ***GTRC will be estopped*** from making arguments in this litigation inconsistent with its statements defending the patent's validity in the EPR. *Regents of Univ. of Minnesota v. AGA Med. Corp.*, 717 F.3d 929, 942 (Fed. Cir. 2013) ("[j]ust as prosecution history estoppel may act to estop an equivalence argument under the doctrine of equivalents, positions taken before the PTO may bar an inconsistent position on claim construction under § 112, ¶ 6") (internal quotations omitted).

8

Here, the likelihood of cancellation and complete resolution is great. Moreover, in the unlikely event that cancellation does not occur, there will be simplification of issues in this case through GTRC's clarification of the claim scope. Accordingly, this factor weighs in favor of a stay.

### C.    GTRC will not be unduly prejudiced by a stay

Some degree of prejudice will always be present when a case is stayed, and thus the focus of this factor is not whether prejudice is ***present*** but whether it is ***undue***. To determine if there is ***undue*** prejudice, Courts in this District have historically looked to four sub-factors: "(1) the timing of the review request; (2) the timing of the request for stay; (3) the status of the review proceedings; and (4) the relationship of the parties." *Doubleday*, 2022 WL 18778991, at *3 (citing *Epic Tech, LLC v. Pen-Tech Assocs., Inc*., No. 1:20-CV-2428-MHC, 2020 WL 8258736 (N.D. Ga. Sept. 28, 2020)).

### 1.    Timing of the review request

The timing of the EPR filing can indicate whether or not Murata is being diligent or dilatory by bringing this stay motion. For example, in *Doubleday* the court found that filing an IPR petition three months after the plaintiff filed a lawsuit and a week after defendants answered indicated that defendants were diligent in pursuing the IPRs, which weighed in favor of granting a stay. *Id.* at *3. In contrast, courts in this District have considered defendants to be dilatory when they could

have filed petitions earlier in the litigation, but instead sat on their hands and waited until after discovery and claim construction had begun. *3Shape A/S v. Carestream Dental, LLC*, No. 1:22-CV-01829-WMR, 2023 WL 2068050, at *1 (N.D. Ga. Jan. 5, 2023). Here, the initial IPR petitions were filed three months after the Complaint was filed and ***prior*** to Murata's answer—making an even stronger case for a stay than in *Doubleday.* The IPRs were shifted into EPRs in less than two weeks after they were denied by a brand-new discretionary denial procedure.

This sub-factor demonstrates that the IPRs and subsequent EPRs were genuine attempts to expeditiously resolve issues of validity—not attempts to gain a tactical advantage. Accordingly, a stay is not unduly prejudicial, which weighs in favor of a stay.

## 2.    Timing of the Request for Stay

Murata filed its request for a stay on the ***same day*** as its EPR request. There was no delay. This factor undoubtedly supports that Murata was diligent and is not merely seeking to gain a tactical advantage. This further demonstrates that a stay is not unduly prejudicial, which weighs in favor of a stay.

## 3.    The status of the review proceedings

This sub-factor considers the potential length of the stay based on the status of the review proceeding. If the review proceeding is still in its early stages the stay is likely to be longer. However, "the mere fact that delay will necessarily result from

the stay does not mean that there is **undue** prejudice." *Doubleday*, 2022 WL 18778991, at *3 (emphasis in original).

Courts in this District frequently find stays to be appropriate despite the possibility of lengthy and uncertain delays pending EPRs. *Tropos Networks, Inc.*, No. 1:06-cv-00585, Dkt. 72 at 4 (N.D. Ga. August 16, 2007) ("While the Court recognizes that additional delay in this matter may be an undesirable result of entering a stay, the Court cannot find that the parties would be benefitted by proceeding with this litigation in the face of a statistically significant chance that the claims will be changed or even eliminated by the reexamination proceedings"); *Adair*, 2013 WL 1859200, at *3 ("As to Plaintiff's claim of prejudice caused by delay in the resolution of this action, '[t]he general prejudice of having to wait for resolution is not a persuasive reason to deny the motion for stay.'") (quoting *Graywire, LLC v. Ciena Corp.*, No. 1:08–CV–2993–BBM, 2009 WL 8590870, at *4 (N.D.Ga. July 17, 2009)).

GTRC's third and fourth factors—the "likelihood of protracted delay" and "the likelihood of irreparable harm"—belong, if anywhere, under this single sub-factor of the prejudice analysis. Both of its arguments are wrong.

### a)    Stays pending EPRs are not "protracted or indefinite"

GTRC is wrong that a stay pending an EPR is "protracted or indefinite." Indeed, the Federal Circuit has held the exact opposite and has blessed such stays as

preserving "the purpose of the reexamination statute." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983). In *Gould*, the Federal Circuit unequivocally said that "[t]he present stay [pending *ex parte* reexamination] is ***not*** for such a protracted or indefinite period as to render its issuance an abuse of discretion." *Id.* at 1341. It further noted that "[e]arly versions of what became the reexamination statute . . . expressly provided for a stay of court proceedings during reexamination," but that such was "deemed unnecessary . . . as explained in the House report":

> The bill does not provide for a stay of court proceedings. It is believed by the committee that stay provisions are unnecessary in that such power already resides with the Court to prevent costly pretrial maneuvering which attempts to circumvent the reexamination procedure. It is anticipated that these measures provide a useful and necessary alternative for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner.

*Id.* (citing H.R.Rep. No. 1307 Part I, 96th Cong., 2d Sess. 4 (1980), U.S.Code Cong. & Admin.News 1980, pp. 6460, 6463).

If the present stay pending an EPR were "protracted and indefinite," simply because an EPR has no definite deadlines, then no case could be stayed pending an EPR. But Courts in this District regularly stay cases pending EPRs. *See e.g.*, *Adair*, 2013 WL 1859200.

GTRC's cases are inapposite. *CTI-Container* did not involve a stay pending an EPR. 685 F.2d 1284 (11th Cir. 1982). And while the *Fusilamp* and *Lexington* cases found the indefinite nature of EPRs to warrant denying a stay, these cases ***from***

*another district* glossed over or completely ignored the three-factor test examined by Courts in this District, and they contradict the Federal Circuit's holding in *Gould*. *See Lexington Lasercomb I.P.A.G. v. GMR Prods., Inc.*, 442 F. Supp. 2d 1277, 1278 (S.D. Fla. 2006); *Fusilamp, LLC, v. Littlefuse, Inc.*, No. 10-20528, 2010 WL 2277545, at *5 (S.D. Fla. June 7, 2010).

GTRC's statistics are also inflated. GTRC's pendency statistics (25.2 months from filing an EPR to a Reexamination Certificate) are taken from all EPRs filed since the inception of the procedure in 1981. Dkt. 27-1. More recent statistics show the average time from filing to a Reexamination Certificate is around fifteen to seventeen months. Ex. F ("Reexamination Operational Statistics," updated 6/2025).[2]

### b)    The stay will not result in "irreparable harm"

"Fading memories of witnesses and loss of evidence" is an argument that is rejected as often as it is raised. Specifically, GTRC argues that the case should be stayed because some of Murata's employees are in their 60s and 70s. The Federal Circuit put it best:

> VA asserts that one potentially relevant witness is "over 60" and three others are "over 70." Since when did 60 become so old? It is undoubtedly true, as many courts have observed, that with age and the passage of time, memories may fade and witnesses may become unavailable. Without more, however, these assertions here are not sufficient to justify a conclusion of undue prejudice.

---

[2] Also available at https://www.uspto.gov/learning-and-resources/statistics/reexamination-information.

*VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1319 (Fed. Cir. 2014).

Other courts have followed the Federal Circuit's example, rejecting arguments about aging witnesses and fading memories, noting that such "applies to any case where reexamination is sought." *Evolutionary Intel. LLC v. Yelp Inc.*, No. C-13-03587 DMR, 2013 WL 6672451, at *8 (N.D. Cal. Dec. 18, 2013) (internal quotations omitted). It is further unclear how GTRC could claim that this will result in "***irreparable*** harm" when there are mechanisms in the Federal Rules to prevent loss of testimony of aging witnesses—such as Federal Rule of Civil Procedure 27. *See VirtualAgility*, 759 F.3d at 1319 (citing Fed. R. Civ. P. 27).

GTRC ignores the four sub-factor test, and its arguments contradict precedent from this District and the Federal Circuit. A stay will not cause undue prejudice.

### 4.    Relationship of the parties

***The parties are not competitors.*** This final sub-factor is concerned with protecting ***competitors*** against delay that may cause "loss of market share and an erosion of good will." *Epic Tech*, 2020 WL 8258736, *5 (quoting *Neste Oil Oyj v. Dynamic Fuels, LLC*, 2013 WL 424754, *2 (D. Del. Jan. 31, 2013). GTRC does not even attempt to address this sub-factor.

On balance, the sub-factors indicate that GTRC will not be unduly prejudiced by a stay. Accordingly, the prejudice factor weighs in favor of a stay.

**D.    A stay would limit the burden of litigation on the Court and on the parties**

GTRC does not analyze this final factor. Temporarily staying this case will in no way increase the work to be done in this litigation. On the contrary, if the Court does not stay the case, and some of the claims are cancelled, the parties and the Court will have engaged in burdensome litigation for naught. If the Court does not stay this case, and the claims survive the EPR, then the Court may still have to resolve prosecution history estoppel issues ***after*** claim construction and significant resources have been spent on this case, causing significant disruption and expenses for both parties. The best way to avoid such disruption is to stay the case now.

## III.    CONCLUSION

GTRC ignores the well-established three-factor analysis that Courts in this District follow for assessing motions such as Murata's. It seeks to have a single sub-factor of the four prejudice sub-factors control not only the prejudice factor but the entire analysis. It can only do so by distorting the well-established test, distorting EPR statistics, and distorting caselaw. The Court should decline to do the same. When analyzing the traditional three-factor test (and optional fourth factor) and giving each their due weight and consideration, the analysis overwhelmingly demonstrates that a stay is appropriate. Accordingly, Murata respectfully requests that the Court grant Murata's Renewed Motion to Stay.

DATED:  September 5, 2025          By: */s/ Jason Lao*

Richard Miller
Georgia Bar No. 065257
Alan White
Georgia Bar No. 410546
Ballard Spahr LLP
999 Peachtree Street NE, Suite 1600
Atlanta, Georgia 30062
Telephone: 678-420-9340
Email: millerrw@ballardspahr.com
          whiteda@ballardspahr.com

Jason T. Lao
Cal. Bar. No. 288161
jason.lao@haynesboone.com
HAYNES AND BOONE, LLP
600 Anton Blvd., Suite 700
Costa Mesa, CA 92626
(949) 202-3000
*Pro Hac Vice*

Dylan Freeman
TX Bar No. 24131314
dylan.freeman@haynesboone.com
HAYNES AND BOONE, LLP
2801 N. Harwood Street, Suite 2300
Dallas, TX 75201
(214) 651-5000
*Pro Hac Vice*

*Attorneys for Defendants Murata
Electronics North America, Inc. and
Murata Manufacturing Co., Ltd.*

## <u>CERTIFICATE OF COMPLIANCE WITH LR 5.1</u>

Pursuant to LR 7.1(D), I HEREBY CERTIFY that this brief has been prepared with one of the font and point selections approved by the Court in LR 5.1.

Date:  September 5, 2025                    */s/ Jason Lao*
                                                                   Jason Lao

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this day, a true and correct copy of the foregoing document was served by filing the same via the Court's CM/ECF system, which will provide notice of the filing of same to all counsel of record.

Date:  September 5, 2025                    */s/ Jason Lao*
                                                                   Jason Lao